UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel. | ) | |
| MARQUIS RIDLEY, | ) | |
| | ) | |
| Petitioner, | ) | No. 07-2004 |
| | ) | |
| v. | ) | The Honorable |
| | ) | Michael P. McCuskey, |
| DONALD HULICK, Warden, | ) | Chief Judge Presiding. |
| | ) | |
| Respondent. | ) | |

**ANSWER**

Under Rule 5 of the Rules Governing Section 2254 Cases in the United States

District Courts, respondent answers petitioner's first amended petition for a writ of

habeas corpus (Doc. 17) and withdraws his motion to dismiss petitioner's previously

filed mixed petition (Doc. 15).  Petitioner's amended petition excludes the

unexhausted claim, and the original petition was timely filed under 28 U.S.C. §

2244(d).  Petitioner's habeas petition lacks merit under § 2254(d)(1); accordingly,

this Court should deny the petition in its entirety.

**I.    Background**

1.    Petitioner, identified as prisoner number K88450, is in respondent's

custody at the Menard Correctional Center in Menard, Illinois.

2.    In 2002, a Macon County jury found petitioner guilty of aggravated

criminal sexual assault, aggravated battery, and robbery.  (Am. Pet.1; Resp. Ex. C

at 1).  A full recitation of the facts (*see* Resp. Ex. C at 1-7) is unnecessary to the

- 1 -

adjudication of this petition.  In sum, petitioner acted as a lookout for a group of men who robbed, battered, and sexually assaulted a woman delivering pizzas.  (*Id.*).

3.    On direct appeal, petitioner argued that trial counsel's performance violated either *United States v. Cronic*, 466 U.S. 648, 659 (1984), or, in the alternative, *Strickland v. Washington*, 466 U.S. 668, 692 (1984).  (Resp. Ex. C at 9). The state appellate court rejected these claims.  (*Id.* at 20).  Petitioner also argued, and the State conceded, that robbery was a lesser included offense (LOI) of aggravated criminal sexual assault.  (*Id.* at 21).  The state appellate court agreed and vacated the conviction and sentence for robbery.  (*Id.* at 21-22).  However, the state appellate court held that the trial court failed to impose the mandatory consecutive sentencing for aggravated battery under 730 ILCS 5/5-8-4(a)(ii) (West. Supp. 2001).  (Resp. Ex. C at 22-23).  Accordingly, the state appellate court ordered that, upon remand, the trial court impose consecutive sentences for the remaining convictions of aggravated criminal sexual assault and aggravated robbery.  (*Id.* at 23-24).  Lastly, petitioner argued that the imposition of consecutive sentences violated *Apprendi v. New Jersey*, 530 U.S. 466 (2000), but the court rejected this argument.  (Resp. Ex. C at 24).  The state appellate court issued its opinion affirming in part and reversing in part on December 8, 2003.  (*Id.* at 24).  Petitioner did not seek leave to appeal this decision.  (Am. Pet. 3).

4.    On February 24, 2003, petitioner filed a pro se postconviction petition, raising a number of issues.  (*See* Resp. Ex. G at 6).  On March 1, 2004, the state

postconviction trial court summarily dismissed the petition, finding that: (1) some of the claims were previously raised on direct appeal and thus barred by res judicata; (2) the remaining claims "could have been raised on direct appeal," but were not, and thus, were forfeited; and (3) the petition was frivolous and without merit.  (*See id.* at 7).

5.    Petitioner appealed, and appellate counsel moved to withdraw under *Pennsylvania v. Finley*, 481 U.S. 551 (1987).  (Resp. Exs. D; G at 7).  Petitioner filed additional points and authorities (Resp. Ex. E), raising eight claims: (1) ineffective assistance of counsel; (2) robbery was a LOI of aggravated criminal sexual assault; (3) mandatory consecutive sentencing violated *Apprendi*; (4) the conviction for aggravated criminal sexual assault should be reduced or vacated because the robbery conviction was vacated on direct appeal; (5) the evidence was insufficient to prove aggravated criminal sexual assault and aggravated battery; (6) the trial court erred by not directing a verdict of not guilty; (7) the State's closing argument was improper; and (8) as a result of the foregoing, petitioner was denied his due process and equal protection rights.  (Resp. Ex. G at 7).

6.    The state appellate court affirmed the denial of petitioner's postconviction petition on July 6, 2005.  (*Id.* at 22).  It held that petitioner's first, second, and third claims were barred by *res judicata* because they were the same claims already decided on direct appeal.  (*Id.* at 10).  Next, the court held that petitioner's fourth claim was not forfeited because it could not have been raised on

direct appeal. (*Id.* at 11). As to petitioner's remaining claims, the court held that they "were likely forfeited," but that it would "address the merits of [petitioner's] arguments." (*Id.* at 14). The court then held that petitioner's fourth through eighth claims all lacked merit. (*Id.* at 13-22).

 7. On July 26, 2005, petitioner sought leave to appeal to the Supreme Court of Illinois. (Resp. Ex. H). On December 1, 2005, that court denied leave to appeal. (Resp. Ex. I).

 8. On November 21, 2006, the United States District Court for the Northern District of Illinois received petitioner's federal habeas application (Doc. 1), which was transferred to this Court on January 5, 2007 (Doc. 8). On March 8, 2007, respondent filed a motion to dismiss the petition because it was a mixed petition (Doc. 15), and on March 26, 2007, petitioner filed the instant amended petition (Doc. 17). In his amended petition, petitioner raises five claims:

**Claim One:** Petitioner's Sixth Amendment right to effective assistance of counsel was violated because trial counsel: (1) did not file a motion to suppress petitioner's statements to the police; and (2) failed to object to improper jury instructions and did not tender appropriate jury instructions.

**Claim Two:** Petitioner's Fifth Amendment rights were violated because the consecutive sentence for aggravated battery violates the one-crime, one-act principle.

- 4 -

**Claim Three:**   Petitioner's Fifth and Sixth Amendment rights were violated when the appellate court failed to remand for general resentencing, and instead instructed the trial court to impose consecutive sentences for aggravated battery.

**Claim Four:**   Petitioner's Fifth Amendment rights were violated, and the trial court placed him in double jeopardy, when it sentenced him on the aggravated criminal sexual assault count after the state appellate court vacated the robbery conviction.

**Claim Five:**   Petitioner's Fifth Amendment rights were violated when the trial court sentenced him on the aggravated criminal sexual assault count even though the state appellate court had vacated the conviction for the LOI of robbery.

(Am. Pet. 6-11).[1]

9.     As a remedy, petitioner asks that this Court remand his case to state court and reduce the aggravated criminal assault conviction.  (*Id.*).

10.     Respondent has attached the following Rule 5 state court records to this Answer under separate filing:

**Ex. A**     Petitioner's Brief, *People v. Ridley*, No. 4-02-0435;

**Ex. B**     State's Brief, *People v. Ridley*, No. 4-02-0435;

**Ex. C**     Opinion, *People v. Ridley*, No. 4-02-0435;

---

[1] "Claim Five" is located on a non-paginated loose sheet, found between pages 10 and 11 on this Court's electronic docketing file.

**Ex. D**     Motion to Withdraw as Counsel, *People v. Ridley*, No. 4-04-0242;

**Ex. E**     Petitioner's Additional Points & Authorities, *People v. Ridley*, No. 4-04-0242;

**Ex. F**     State's Brief, *People v. Ridley*, No. 4-04-0242;

**Ex. G**     Opinion, *People v. Ridley*, No. 4-04-0242;

**Ex. H**     Petition for Leave to Appeal, No. 101107; and

**Ex. I**     Order Denying Leave to Appeal, No. 101107.

    11.     The trial transcripts are not available because they are part of the record in petitioner's ongoing appeal of the state court's denial of his motion to vacate his conviction pending in the Fourth District of the Illinois Appellate Court. (*See* Am. Pet. at 13 ¶ 15).  The trial transcripts should not be necessary to the decision in this case.  *See Simental v. Matrisciano*, 363 F.3d 607, 612 (7th Cir. 2004) ("the decision of whether transcripts are necessary is left to the sound discretion of the district court," and the need to review state court transcripts is "quite rare"); *Green v. Greer*, 667 F.2d 585, 586-90 (7th Cir. 1981); *but see Thompson v. Battaglia*, 458 F.3d 614, 617 (7th Cir. 2006) (expressing in dicta a desire for trial transcripts in ineffective assistance of counsel cases).

## II.     Legal Standard

    12.     Federal habeas relief is available only where custody of the petitioner violates the Constitution, laws, or treaties of the United States.  28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).  A federal court may not grant such relief unless the state court's judgment "resulted in a decision that was

contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). Under § 2254(d)(1), "clearly established law" as determined by the Supreme Court "refers to the holdings, as opposed to the dicta, of th[e Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

## III.   Argument

13.   Four of petitioner's five grounds for habeas relief are procedurally defaulted.  Three were not presented to the Supreme Court of Illinois, while one was not presented to any state appellate court.  His non-defaulted claim, that the conviction for aggravated criminal sexual assault should be reduced or vacated because the robbery conviction was vacated on direct appeal ("Claim Five"), lacks merit.  Accordingly, this Court should deny petitioner's application for habeas relief in its entirety.

### A.   Procedurally Defaulted Claims

14.   This Court should not reach the merits of all but one of petitioner's habeas claims because they were not fully and fairly presented to all levels of state court.  With rare exception, a federal court may not address a state prisoner's claims unless the state courts have had a full and fair opportunity to review the issue.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) ("[S]tate prisoners must give

the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."); *Bell v. Pierson*, 267 F.3d 544, 555 (7th Cir. 2001). Before reaching the merits, district courts should deny a petition whenever the petitioner "either failed to exhaust all available state remedies or raise all claims before the state courts." *Dressler v. McCaughtry*, 238 F.3d 908, 912 (7th Cir. 2001). "Fair presentment . . . requires the petitioner to assert his federal claim through one complete round of state-court review, either on direct appeal of his conviction or in post-conviction proceedings." *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004). "This means that the petitioner must raise the issue at each and every level in the state court system, including levels at which review is discretionary rather than mandatory." *Id.* at 1025-26. Thus, a petitioner "who has exhausted his state court remedies without properly asserting his federal claim *at each level* of state court review has procedurally defaulted that claim." *Id.* at 1026 (emphasis added).

15. Petitioner has procedurally defaulted Claims One, Two, and Three, for failing to raise the issues with the Supreme Court of Illinois (*See* Resp. Ex. H); and Claim Four, for failing to raise the issue in any state appellate court. *See Boerckel*, 526 U.S. at 845; *Sternes*, 390 F.3d at 1025. Petitioner's failure to raise these issues in the state supreme court (or, in the case of his double jeopardy claim, in any state appellate court) deprived the state courts of a full and fair opportunity to review his claims. *See, e.g.*, *White v. Godinez*, 192 F.3d 607, 608 (7th Cir. 1999) (failure to

raise claim in postconviction PLA results in procedural default); *Mahaffey v. Schomig*, 294 F.3d 907, 919 (7th Cir. 2002) (complete failure to raise claim in state court results in procedural default).  On this basis, this Court should hold that petitioner has procedurally defaulted his Claims One through Four.

16.    A federal court may review a procedurally defaulted claim in only two rare circumstances.  The petitioner must show either: (1) "cause for his state-court default of *any* federal claim, and prejudice therefrom;" or (2) "a sufficient probability that [the court's] failure to review his federal claim will result in a fundamental miscarriage of justice."  *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).  Here, petitioner has not claimed, and cannot show, that either exception applies.  Accordingly, this Court should deny Claims One through Four.

**B.    Claim Five Lacks Merit**

17.    The trial court did not violate petitioner's constitutional rights by resentencing petitioner for aggravated criminal sexual assault after the state appellate court vacated the LOI of robbery.  At the very least, the state appellate court's decision was not an objectively unreasonable application of United States Supreme Court precedent.  § 2254(d)(1).

18.    Petitioner appears to be arguing that the state appellate court's order vacating the LIO charge of robbery somehow also invalidated the greater conviction of aggravated criminal sexual assault.  (Am. Pet. 10-11).  This claim lacks any

merit.[2]  As the state court explained, the jury found that there was sufficient proof

presented at trial to find petitioner guilty of both aggravated criminal sexual

assault (based on committing sexual assault during a robbery) and robbery, (Resp.

Ex. G at 13), but "that because it would be impossible to commit the greater offense

of aggravated criminal sexual assault (as charged) without necessarily committing

the [LOI] of robbery, judgment and sentence should only be imposed on the greater

offense of aggravated criminal sexual assault." (*Id.*).  Put another way, the state

appellate court did not find petitioner innocent of robbery when it vacated that

conviction, but found only that, under Illinois law, petitioner could not be convicted

and sentenced for both a greater and a lesser-included offense.[3]  The direct appeal

court's vacatur of the robbery conviction to avoid cumulative punishment does not

invalidate the jury's verdict that petitioner committed the predicate of robbery.

19.    The state court's postconviction holding was correct, and, at the very

least, was neither contrary to nor an objectively unreasonable application of any

---

[2] This was the argument that petitioner made in state court.  (*See* Resp. Exs. D ¶ 5;
E ¶ 1; G at 13).  To the extent he now argues something else, i.e. that he has been
tried twice for robbery resulting in double jeopardy, that it was improper to convict
for both crimes, or that the robbery conviction must exist in order to support the
aggravated criminal sexual assault conviction, such claims were not presented to
the state court and would be procedurally defaulted.

[3] Illinois law goes further than federal law.  Under the federal constitution, the
direct appeal court was required only to vacate the consecutive *sentence* for robbery,
not to vacate *both* the sentence and conviction.  *See United States v. Baffia*, 949
F.2d 1465, 1472 (7th Cir. 1991) (explaining that a defendant may receive
convictions for both greater and lesser-included offenses, but may not receive
consecutive sentences for both).

identifiable United States Supreme Court precedent.  *See* § 2254(d)(1).  Petitioner

has not identified, and respondent cannot locate, any Supreme Court authority that

is directly on point.  Accordingly, this claim lacks merit.

**IV.    Conclusion**

21.    This Court should deny the petition in its entirety.  In the event this

Court finds that any of petitioner's defaulted claims should be addressed on the

merits, respondent seeks leave to address such claim or claims in a supplemental

pleading.

May 4, 2007                              Respectfully submitted,

                                        LISA MADIGAN
                                        Attorney General of Illinois

                        By:     s/ Karl R. Triebel
                                KARL R. TRIEBEL
                                Assistant Attorney General
                                100 W. Randolph St., 12th Floor
                                Chicago, Illinois 60601
                                Phone: (312) 814-2391
                                Fax: (312) 814-5166
                                E-mail: ktriebel@atg.state.il.us
                                Att.Reg.No.: 6285222

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel. | ) | |
| MARQUIS RIDLEY, | ) | |
| | ) | |
| Petitioner, | ) | No. 07-2004 |
| | ) | |
| v. | ) | The Honorable |
| | ) | Michael P. McCuskey, |
| DONALD HULICK, Warden, | ) | Chief Judge Presiding. |
| | ) | |
| Respondent. | ) | |

## CERTIFICATE OF SERVICE

I certify that on May 4, 2007, I electronically filed respondent's **answer** with the Clerk of the United States District Court for the Central District of Illinois, Urbana Division, using the CM/ECF system; and I hereby certify that on May 4, 2007, I mailed by United States Postal Service, the above referenced filing to the following non-ECF-registered party: Marquis Ridley, K88450, Menard Correctional Center, 711 Kaskaskia Street, P.O. Box 711, Menard, Illinois, 62259.

LISA MADIGAN
Attorney General of Illinois

By:    s/ Karl R. Triebel
KARL R. TRIEBEL
Assistant Attorney General
100 W. Randolph St., 12th Floor
Chicago, Illinois 60601
Phone: (312) 814-2391
Fax: (312) 814-5166
E-mail: ktriebel@atg.state.il.us
Att.Reg.No.: 6285222

E-FILED
Friday, 04 May, 2007  12:00:13 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel. | ) | |
| MARQUIS RIDLEY, | ) | |
| | ) | |
| Petitioner, | ) | No. 07-2004 |
| | ) | |
| v. | ) | The Honorable |
| | ) | Michael P. McCuskey, |
| DONALD HULICK, Warden, | ) | Chief Judge Presiding. |
| | ) | |
| Respondent. | ) | |

**TO THE CLERK OF THE COURT**

Under Rule 5 of the Rules Governing Section 2254 Cases in the United States

District Courts, respondent has attached the following Rule 5 state court records:

**Ex. A**     Petitioner's Brief, *People v. Ridley*, No. 4-02-0435;

**Ex. B**     State's Brief, *People v. Ridley*, No. 4-02-0435;

**Ex. C**     Opinion, *People v. Ridley*, No. 4-02-0435;

**Ex. D**     Motion to Withdraw as Counsel, *People v. Ridley*, No. 4-04-0242;

**Ex. E**     Petitioner's Additional Points & Authorities, *People v. Ridley*, No. 4-04-0242;

**Ex. F**     State's Brief, *People v. Ridley*, No. 4-04-0242;

**Ex. G**     Opinion, *People v. Ridley*, No. 4-04-0242;

**Ex. H**     Petition for Leave to Appeal, No. 101107; and

- 1 -

**Ex. I**      Order Denying Leave to Appeal, No. 101107.


May 4, 2007                          Respectfully submitted,


                                     Lisa Madigan
                                     Attorney General of Illinois

                             By:     s/ Karl R. Triebel
                                     Karl R. Triebel
                                     Assistant Attorney General
                                     100 W. Randolph St., 12th Floor
                                     Chicago, Illinois 60601
                                     Phone: (312) 814-2391
                                     Fax: (312) 814-5166
                                     E-mail: ktriebel@atg.state.il.us
                                     Att.Reg.No.: 6285222



NO. 4-02-0435

IN THE

APPELLATE COURT OF ILLINOIS

FOURTH JUDICIAL DISTRICT

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court of the Sixth Judicial Circuit, Macon County, Illinois. |
| Plaintiff-Appellee, | ) | |
| vs. | ) | No. 01-CF-971 |
| MARQUIS RIDLEY, | ) | Honorable John K. Greanias, |
| Defendant-Appellant. | ) | Judge Presiding. |

## Brief and Argument for Defendant-Appellant

DANIEL D. YUHAS
Deputy Defender
Office of the State Appellate Defender
Fourth Judicial District
400 South Ninth Street, Suite 102
P.O. Box 5750
Springfield, IL  62705-5750
(217) 782-3654

LAWRENCE J. ESSIG
Assistant Defender

COUNSEL FOR DEFENDANT-APPELLANT

EXHIBIT A

## POINTS AND AUTHORITIES

### I.

**TRIAL COUNSEL WAS CONSTITUTIONALLY INEFFECTIVE FOR CONCEDING DEFENDANT'S GUILT OF THE UNDERLYING OFFENSE OF ROBBERY, AND THEREBY GUARANTEEING CONVICTION OF ALL OFFENSES UNDER THE LAW OF ACCOUNTABILITY IN ILLINOIS.**

**A.      *Defense Counsel Was Constitutionally Ineffective for Conceding Defendant's Guilt and Failing to Understand the Law of Accountability.***

*Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052,
80 L.Ed.2d 674 (1984) .................................. 13, 16

*United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039,
80 L.Ed.2d 657 (1984) .................................. 15

*People v. Batchelor*, 171 Ill.2d 367, 685 N.E.2d 777 (1996) .............. 11

*People v. Chandler*, 129 Ill.2d 233, 543 N.E.2d 1290 (1989) .......... 13, 15

*People v. Hattery*, 109 Ill.2d 449, 488 N.E.2d 513 (1986) ............ 13, 15

*People v. Kessler*, 57 Ill.2d 493, 315 N.E.2d 29 (1974) ................. 11

*People v. Taylor*, 164 Ill.2d 131, 646 N.E.2d 567 (1995) ............... 11

*People v. Terry*, 99 Ill.2d 508, 460 N.E.2d 746 (1984) ................. 12

*People v. Calhoun*, 144 Ill.App.3d 829, 494 N.E.2d 498 (1st Dist. 1986) ..... 15

*People v. Fyke*, 190 Ill.App.3d 713, 546 N.E.2d 1101 (5th Dist.1989) ....... 12

*People v. Howard*, 232 Ill.App.3d 386, 597 N.E.2d 703 (1st Dist. 1992) .... 17

*People v. Lewis*, 240 Ill.App.3d 463, 609 N.E.2d 673 (1st Dist. 1992) .... 16, 17

*People v. Salgado*, 263 Ill.App.3d 238, 635 N.E.2d 1367 (2nd Dist. 1994) .... 14

720 ILCS 5/5-2(c) (West 2000) ................................... 11

## II.

**THE TRIAL COURT ERRED BY IMPOSING CONSECUTIVE SENTENCES FOR ROBBERY AND AGGRAVATED CRIMINAL SEXUAL ASSAULT, WHERE ROBBERY AS CHARGED WAS AN INCLUDED OFFENSE AND SHOULD BE VACATED.**

*People v. Conerty*, 296 Ill.2d 459, 695 N.E.2d 898 (4th Dist. 1998) . . . . . . . . 18

*People v. Krueger*, 175 Ill.2d 600, 675 N.E.2d 604 (1996) . . . . . . . . . . . . . . 19

*People v. Rodriguez*, 169 Ill.2d 183, 661 N.E.2d 305 (1996) . . . . . . . . . . . . 18

*People v. Behl*, 279 Ill.App.3d 1071, 666 N.E.2d 357 (4th Dist. 1996) . . . . . . 19

*People v. Bratton*, 178 Ill.App.3d 718, 533 N.E.2d 572 (4th Dist. 1989) . . . . . 19

*People v. Monigan*, 204 Ill.App.3d 686, 561 N.E.2d 1358 (3rd Dist. 1990) . . . 19

## III.

**THE MANDATORY CONSECUTIVE SENTENCING PROVISIONS CONTAINED IN 730 ILCS 5/5-8-4 IS UNCONSTITUTIONAL UNDER *APPRENDI*.**

*Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*People v. Carney*, 196 Ill.2d 518, 752 N.E.2d 1137 (2001) . . . . . . . . . . . . . 21

*People v. Fisher*, 184 Ill.2d 441, 705 N.E.2d 67 (1998) . . . . . . . . . . . . . . . . 20

*People v. Latona*, 184 Ill.2d 260, 703 N.E.2d 901 (1998) . . . . . . . . . . . . . . . 21

*People v. Wagener*, 196 Ill.2d 269, 752 N.E.2d 430 (2001) . . . . . . . . . . . . . 21

U.S. Const., amends. V . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

U.S. Const., amends. VI . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

U.S. Const., amends. XIV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

730 ILCS 5/5-8-4(a) (West 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

730 ILCS 5/5-8-4(b) (West 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

## NATURE OF THE CASE

Following a jury trial, Marquis Ridley was convicted of aggravated criminal sexual assault, robbery, and aggravated battery. He was sentenced to a consecutive term of 30 years for aggravated criminal sexual assault and 7 years for robbery, and a concurrent term of 5 years imprisonment for aggravated battery. He appeals the conviction and sentence imposed. No issue is raised on the pleadings.

## ISSUES PRESENTED FOR REVIEW

### I.

Whether trial counsel was constitutionally ineffective for conceding defendant's guilt of the underlying offense of robbery, and thereby guaranteeing conviction of all offenses under the law of accountability in Illinois.

A. Whether Defense counsel was constitutionally ineffective for conceding defendant's guilt and failing to understand the law of accountability.

### II.

Whether the trial court erred by imposing consecutive sentences for robbery and aggravated criminal sexual assault, where robbery as charged was an included offense and should be vacated.

### III.

Whether the mandatory consecutive sentencing provisions contained in 730 ILCS 5/5-8-4 is unconstitutional under *Apprendi*.

## JURISDICTION

The defendant's appeal is from a final judgment of conviction entered upon a finding of guilt, pursuant to article VI, section 6 of the Illinois Constitution and Illinois Supreme Court Rules 603 and 606.

The defendant was sentenced on April 10, 2002. (Vol. IV, R. 2) He filed a motion to reconsider sentence on April 16, 2002. (C. 115) It was denied on April 24, 2002. (C. 123) Notice of appeal was timely filed on April 25, 2002. (C. 117)

## STATEMENT OF FACTS

Marquis Ridley was charged with aggravated criminal sexual assault, robbery, and two counts of aggravated battery. (C. 3-6) The alleged incident involved Sondra Munden, and occurred on or about July 11, 2001. The named co-defendants at trial included Dustin Chenoweth, Demarco Hill, and Marcellus Jarrett. Mr. Ridley pled not guilty to all charges, and demanded a jury trial.

At trial, Sheila Luthy testified that sometime before midnight on the night in question she was working at a Speedway convenience store in Decatur. (Vol. II, R. 14) A woman who worked for Domino's Pizza walked in, and asked her for change for a local delivery. Luthy gave her the change and the woman left. After midnight, the woman returned, but this time she was crying and very upset. She was bloody and naked, and holding her clothes in her arms. Luthy took her to a backroom to dress. The woman said she had been attacked and raped by the side of a house by several men. Luthy called police. (Vol. II, R. 18-19)

Officer Edward Cunningham responded and arrived at Speedway. (Vol. II, R. 21-22) He testified that the woman, Sondra Munden, had blood on her face and clothing, and a swollen eye. He took her to a hospital and then went to the crime scene to collect evidence. He first observed the car driven by Munden parked in the driveway. He retrieved from the outside of the house a Domino's Pizza ball cap, a blue bandana, a pair of women's underwear, loose change, and a tire iron next to some blood on the grass in the backyard. (Vol. II, R. 24-29) He said he preserved the tire iron for print testing. (Vol. II, R. 31)

Sondra Munden testified that at the relevant time she was a night shift pizza delivery driver for Domino's in Decatur. (Vol. II, R. 35) She had a call for a

-6-

delivery to a house on South Shore Drive. She pulled into the driveway there, and saw two boys, one white and one black, sitting on some steps. She rolled down her window and asked them if she needed to get change for the delivery because she had no change. They said yes. She left and went to a Speedway store nearby. She got change from Luthy, and returned to the house. (Vol. II, R. 38) She handed the order to the boys, who were still sitting on the steps. She turned briefly and saw a black male coming behind her. As she turned back, one of the boys hit her in the eye. She then felt a foot on her back, and she was now facedown on the driveway. They began asking her for money, and she told them it was in the car. At one point she was turned around and the person with his foot on her back took about $50 from her pockets. They took about $200 from the car. The person let her up and pushed her to the backyard of the house. (Vol. II, R. 42) She next remembered being on her back in the backyard with her clothing removed. One of the black males had sexual intercourse and ejaculated on her body. After she heard some talking, a group of them began kicking her and someone struck her head several times with a hard object. (Vol. II, R. 45) They then walked away talking amongst themselves. She grabbed her clothing and ran back to Speedway. She identified at trial the clothing recovered by Officer Cunningham. She remained hospitalized for two days. She did not and could not identify any of these perpetrators. (Vol. II, R. 44)

Officer Jeremy Welker interviewed Mr. Ridley at the station house on July 14, 2001. (Vol. II, R. 61) In his first written statement at that time, the defendant denied any knowledge of the crime, and accused the other three co-defendants of falsely implicating him in the crime. After reading the statement,

Welker told Mr. Ridley he had information that he was actually present. (Vol. II, R. 65) The defendant then made a statement converted into writing. In this second written statement, the defendant essentially asserted that he knew a robbery was to take place, but he was acting only as a lookout. When the complainant was hit by somebody in front of the house, he checked for traffic. After he saw someone taking her toward the side of the house, he walked to a car they had down the street and remained inside. (Vol. II, R. 67, 68) He later returned on foot to see what the problem or delay had been. They then walked to the car and drove away. In the statement, he had denied touching or hurting her in any fashion. (Vol. II, R. 69)

Following the testimony, and deliberation, the jury found the defendant guilty of the charges. (C. 35) A sentencing hearing was thereafter held by the trial court.

On April 10, 2002, the sentencing hearing commenced. (Vol. IV, R. 2) Following argument, the aggravated battery counts were merged. The trial court sentenced the defendant to a consecutive term of 30 years for aggravated criminal sexual assault and 7 years for robbery, and a concurrent term of 5years for aggravated battery. (C. 119; Vol. IV, R. 21-22)

Notice of appeal was timely filed on April 25, 2002. (C. 117) This appeal follows.

**ARGUMENT**

**I.**

**TRIAL COUNSEL WAS CONSTITUTIONALLY INEFFECTIVE FOR CONCEDING DEFENDANT'S GUILT OF THE UNDERLYING OFFENSE OF ROBBERY, AND THEREBY GUARANTEEING CONVICTION OF ALL OFFENSES UNDER THE LAW OF ACCOUNTABILITY IN ILLINOIS.**

The defendant submits that the cause must be reversed because he was denied his Sixth Amendment right to effective assistance of counsel, where trial counsel misapprehended Illinois law and conceded defendant's guilt during argument and throughout trial.

The defendant was charged and convicted of aggravated criminal sexual assault, robbery, and two counts of aggravated battery. Trial counsel defended on the grounds that because the defendant committed the conduct relating to the underlying robbery offense, he could be found guilty only of that offense. He wrongly argued that because the defendant lacked the intent to rape he could not be guilty of the aggravated criminal sexual assault committed by his compatriots. The record shows counsel misunderstood the law of accountability. The strategy assured the defendant would be found guilty of all the offenses in this cause.

**A.    *Defense Counsel Was Constitutionally Ineffective for Conceding Defendant's Guilt and Failing to Understand the Law of Accountability.***

During his opening argument, defense counsel first hinted that he would admit defendant's guilt to robbery, and told the jury the following:

> Now, we expect that a police officer is going to testify. Mr. Ridley was interviewed. Mr. Ridley gave a handwritten statement. Mr. Ridley acknowledged that he knew that a robbery was to take place, according to

-9-

the officer and according to the handwritten statement. But that's all. He didn't agree to participate in a rape. He didn't have any idea a rape was to occur.

(Vol. II, R. 12)

During his closing argument, defense counsel was more obvious and openly admit defendant's guilt to robbery, telling the jury such things as:

It's obvious to each and every one of you that I'm not going to say anything about the robbery count. There is no evidence that he didn't make those statements. *That's it.  It's uncontradicted; and from those, it is obvious that on the robbery, Marquis both planned prior to and participated as a lookout in the robbery.*

(Vol. III, R. 20)

Now there are places in this case I would suggest that from Mr. Ridley's own statement he was legally accountable and responsible for what occurred; and that is what occurred out front for what he had agreed to do. *He helped plan a robbery.  He went with them. He participated in a robbery, and he acted as the lookout for them.*

(Vol. III, R. 25)

*As to the robbery, as I said, that seems self-evident.* As to the sexual assault, he wasn't there. He didn't plan it. He didn't agree to participate in it.

(Vol. III, R. 28) (Emphasis added.)

Moreover, counsel's comments that the defendant "left" the scene and waited in a car, in which they later allegedly fled, might actually support flight. (Vol. III, R. 25)  It is no wonder that the State in rebuttal closing argument told the jurors that defense counsel had spent most of his time arguing the defendant's guilt, having conceded that defendant was there and participated in the underlying conduct related to robbery.  (Vol. III, R. 28, 30)  As suggested by the State, the jurors had little if anything to decide because defense counsel,

-10-

having admitted to participating in the underlying robbery, had admitted guilt on all counts under the law of accountability in Illinois. (Vol. III, R. 30)

In *People v. Batchelor*, 171 Ill.2d 367, 685 N.E.2d 777 (1996), our Supreme Court found that under Illinois law a person is legally accountable for the any conduct of another when "[e]ither before or during the commission of *an offense*, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense." 720 ILCS 5/5-2(c) (West 2000); *People v. Taylor*, 164 Ill.2d 131, 646 N.E.2d 567 (1995). "[A]ctive participation has never been a requirement for imposing criminal liability under a theory of accountability; that is, one may aid and abet without actively participating in the overt act." *Batchelor*, 685 N.E.2d at 780.

Words of agreement are unnecessary to establish a common purpose or design to commit a crime, which can be inferred from the circumstances surrounding the perpetration of the unlawful conduct. *Batchelor*, 685 N.E.2d at 780. In determining a defendant's legal accountability, "the trier of fact may consider the defendant's presence during the commission of the offense, the defendant's continued close affiliation with other offender after the commission of the crime, the defendant's failure to report the incident, and the defendant's flight from the scene." *Batchelor*, 685 N.E.2d at 780.

In *People v. Kessler*, 57 Ill.2d 493, 315 N.E.2d 29, 32 (1974), the Supreme Court emphasized that this rule provides that "where two or more persons engage in a common criminal design or agreement, *any acts* in the furtherance thereof committed by one party are considered to be the acts of all parties to the common design and all are equally responsible for the consequences of such

further acts." When the Supreme Court applied the common-design rule in *Kessler*, it affirmed an attempt murder conviction even though an intent to kill was not shown nor proved.

In *People v. Terry*, 99 Ill.2d 508, 460 N.E.2d 746 (1984), the substantive underlying offense which the group conspired and intended to commit was a simple battery. However, each person was found responsible for the further conduct of one of them. The result was that when one of the parties murdered the victim, under the common-design rule, all were legally accountable for that murder.

Similarly, in *People v. Fyke*, 190 Ill.App.3d 713, 546 N.E.2d 1101 (5th Dist.1989), the Court reiterated that the law on accountability incorporates the common-design rule, which "provides that where two or more persons engage in a common criminal design, *any* acts in the furtherance thereof committed by one party are considered to be the acts of all parties to the common design and all are accountable for those acts." *Fyke*, 546 N.E.2d 1103, *citing People v. Terry*, 99 Ill.2d 508, 460 N.E.2d 746, 749 (1984)(*emphasis original*). Even if the jury here determined that the defendant did not know that the victim was to be raped, participation in the underlying scheme to rob was and is sufficient. Under the common-design rule, as in *Fyke*, the defendant here was legally accountable for any further unintended acts.

As noted, the defendant here was charged with aggravated criminal sexual assault and robbery (and two counts of aggravated battery). Counsel's apparent strategy was to admit the commission of the underlying offense relating to robbery and to submit that the defendant did not intend to rape the victim. That strategy assured the defendant would be found guilty of all offenses, including

-12-

both aggravated criminal sexual assault and robbery, because to be found guilty the defendant need only intend to commit the underlying offense and need not intend to rape. *See also People v. Chandler*, 129 Ill.2d 233, 543 N.E.2d 1290, 1296 (1989).

In *Chandler*, an accountability case, counsel apparently ignored the armed robbery charge and argued the jury could only find the defendant guilty of attempt murder if they believed he intended to kill the victim. *Chandler*, 543 N.E.2d at 1295-1296. However, since the jury was instructed on the theory of accountability, the jury had no choice but to find the defendant guilty of armed robbery and attempt murder, even if they found he did not intend to kill. Defense counsel's performance left the jury with no choice but to convict the defendant of all of the offenses charged. As in *Chandler*, the result here constituted ineffective assistance of counsel.

### *Standard of Review*

It is the defendant's position on appeal that trial counsel did not render reasonably competent assistance of counsel as required by the Sixth and Fourteenth Amendments of the United States Constitution. Because of counsel's serious misapprehension of the law, his performance was so deficient as to be *per se* ineffective. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, 696 (1984); *People v. Hattery*, 109 Ill.2d 449, 488 N.E.2d 513, 519 (1986).

Alternatively, as discussed later, counsel was ineffective under the traditional two-prong test of incompetent advice and prejudice to the case. *Strickland,* 80 L.Ed.2d at 697-99. In evaluating a claim of prejudice, a reviewing

-13-

court may grant relief based upon even an individual error of counsel. *People v. Salgado*, 263 Ill.App.3d 238, 635 N.E.2d 1367, 1371 (2nd Dist. 1994).

What must be pointed out first in this case is the striking fact that trial counsel need not have admitted outright defendant's guilt on any offense. The record shows that the complainant, Sondra Munden, never identified the defendant as participating in this crime at any time. (Vol. II, R. 44) She certainly did not place him at the scene, or assert he struck her or hurt her at any time. She never really offered a testimonial explanation. The perpetrators certainly were not wearing masks to conceal their identity. Even though this was surely a traumatic circumstance, she testified that she actually had been to the crime scene and observed two boys and then left for a short time. Not one of the three co-defendants testified and implicated Mr. Ridley in any crime. Too, no physical was ever connected to the defendant. The defendant certainly did not testify and implicate himself in any manner.

The only evidence here were hearsay statements by the defendant, one which was wholly exculpatory. (Vol. II, R. 62-64) In his first written statement, the defendant denied any knowledge of the crime, and accused the other three co-defendant's of falsely implicating him in the crime. In the following statement, made only after the officer who was interviewing him claimed he had information the defendant was actually present, the defendant took the not so unusual route of downplaying any such role. Whether necessarily true or not, he claimed he was acting as a lookout in a robbery attempt until the complainant was being hit, wherein he fled to a car down the street. (Vol. II, R. 62-64) Downplaying or attacking such a confession or admission is common fodder for defense counsel even in the most serious of cases. Clearly, there was

-14-

no reason whatever for defense counsel here to effectively abandon this case in such a manner, and simply admit guilt for the offense of robbery, particularly considering the consequences.

Trial counsel should be found *per se* ineffective where the defendant's case lacked meaningful presentation under the adversarial conditions required by the Sixth Amendment. *Hattery*, 488 N.E.2d at 518. In *Hattery*, trial counsel employed the strategy of attempting to show that the defendant was guilty of murder but undeserving of the death penalty. The Supreme Court found that counsel's actions deprived the defendant of his right of having the issue of guilt or innocence reasonably presented as an adversarial issue. *Hattery*, 488 N.E.2d at 519; *see also People v. Calhoun*, 144 Ill.App.3d 829, 494 N.E.2d 498 (1st Dist. 1986). Thus, where trial counsel's representation is so lacking as to deprive the defendant of meaningful adversarial testing, the result alone constitutes a denial of Sixth Amendment rights, because the adversarial process itself is presumptively unreliable. *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657, 668 (1984). With this presumption, the defendant need not establish actual prejudice resulting from the deficiencies of trial counsel. *People v. Chandler*, 129 Ill.2d 233, 543 N.E.2d 1290, 1294 (1989).

In the instant case, trial counsel's strategy was predicated on a gross misunderstanding of the law and deprived the defendant of his right to have his case meaningfully presented. Counsel's argument that the lack of specific intent to rape was required for accountability wholly undermined the entire case. There is no such requirement under Illinois accountability law. There is no way to gauge at this stage what trial counsel's strategy would have been had he

-15-

understood the principles of accountability under Illinois law. The result was *per se* ineffective assistance of counsel.

Alternatively, to determine whether there has been ineffective assistance of counsel under the traditional two-prong test noted, the defendant must show that his counsel's representation fell below an objective standard of reasonableness, and there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, 698 (1984). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland*, 80 L.Ed.2d at 698.

As discussed above in depth, application of *Chandler* alone to the present case compels the conclusion these standards have been more than sufficiently satisfied. *See People v. Lewis*, 240 Ill.App.3d 463, 609 N.E.2d 673 (1st Dist. 1992). In the instant case, it is submitted that defense counsel's representation deprived the defendant of a fair trial. By misunderstanding the law in this most serious criminal case and making the aforementioned concessions, counsel guaranteed defendant would be found guilty of the charged offenses. This surely fell below an objective standard of reasonableness, and the result was sufficient to undermine confidence in the outcome, within the meaning of the Sixth Amendment. Therefore, counsel in this cause must be deemed ineffective.

Finally, in *Lewis*, defense counsel was found incompetent in a murder case by misunderstanding the law of accountability. Counsel argued to the jury that a statement by the defendant would show that the defendant did not strike the fatal blow. The Appellate Court noted that the statement was not admitted at

trial, and in any event, a conviction for murder can stand even where the fatal wound was inflicted by an accomplice. *Lewis*, 609 N.E.2d at 678.

In the instances pointed out above, trial counsel was operating under a misunderstanding of the law as it applied to his case. The same is true in the instant case. Certainly, here, counsel misunderstood or ignored the applicable law, and the defendant was severely prejudiced. *See People v. Howard*, 232 Ill.App.3d 386, 597 N.E.2d 703, 707-708 (1st Dist. 1992). The cause must be reversed.

For all these reasons, defense counsel's representation constituted ineffective assistance. It is respectfully requested that this Honorable Court reverse and remand the cause for a new trial.

## II.

**THE TRIAL COURT ERRED BY IMPOSING CONSECUTIVE SENTENCES FOR ROBBERY AND AGGRAVATED CRIMINAL SEXUAL ASSAULT, WHERE ROBBERY AS CHARGED WAS AN INCLUDED OFFENSE AND SHOULD BE VACATED.**

At sentencing, the trial court imposed a term of 30 years and 7 years imprisonment for the first two counts, to be served consecutively. The first count alleged the offense of aggravated criminal sexual assault, and the second alleged the offense of robbery. Because the robbery offense was an included offense of aggravated criminal sexual assault, as charged in the information, that included offense and sentence must be vacated. The trial judge here erred on this point of law, and should be reversed.

In *People v. Conerty*, 296 Ill.2d 459, 695 N.E.2d 898 (4th Dist. 1998), this Court considered whether home invasion was an included offense of aggravated criminal sexual assault, so that the home invasion conviction and sentence must be vacated. In that case, the trial judge had imposed consecutive sentences for the offenses. This Court found that the home invasion charge was an included offense of aggravated criminal sexual assault because the acts as charged in the indictment showed they were based upon the same conduct. *Conerty*, 695 N.E.2d at 902, *citing People v. Rodriguez*, 169 Ill.2d 183, 661 N.E.2d 305 (1996). As emphasized by this Court, there was but a single charge of aggravated criminal sexual assault. *Conerty*, 695 N.E.2d at 902.

The same is true in the present case. Here, the robbery charge was the underlying offense for the charged offense of aggravated criminal sexual assault. (C. 3, 4) There was but a single charge of aggravated criminal sexual assault here. (C. 3) Accordingly, it is clear that the robbery charge was a lesser included offense of the single charge of aggravated criminal sexual assault.

-18-

Under the authority of *Conerty*, then, the conviction and sentence for the included offense must be vacated. *See also People v. Bratton*, 178 Ill.App.3d 718, 533 N.E.2d 572 (4th Dist. 1989)(as charged in the indictment, unlawful restraint was lesser included offense of residential burglary and must be vacated); *People v. Monigan*, 204 Ill.App.3d 686, 561 N.E.2d 1358 (3rd Dist. 1990)(home invasion and aggravated battery).

For all these reasons, the conviction and consecutive sentence imposed for robbery must be vacated. The cause should be remanded so that the mittimus be corrected.

### *Standard of Review*

It is submitted that *de novo* review is appropriate where the question involves the application of the law to undisputed facts, as is urged in the instant case. *People v. Krueger*, 175 Ill.2d 600, 675 N.E.2d 604 (1996). Alternatively, the standard of review involving sentencing issues is whether the trial court abused its sentencing discretion. *People v. Behl*, 279 Ill.App.3d 1071, 666 N.E.2d 357, 358 (4th Dist. 1996).

For these reasons, it is respectfully requested that this cause be remanded, so that the mittimus may be corrected indicating that the conviction and sentence for robbery be vacated.

## III.

### THE MANDATORY CONSECUTIVE SENTENCING PROVISIONS CONTAINED IN 730 ILCS 5/5-8-4 IS UNCONSTITUTIONAL UNDER *APPRENDI.*

The constitutionality of a statute is a question of law, and the standard of review accordingly is *de novo*. *People v. Fisher*, 184 Ill.2d 441, 705 N.E.2d 67 (1998).

Defendant was sentenced to a mandatory consecutive term for aggravated criminal sexual assault and robbery. The Illinois Code of Corrections provides a general prohibition on the imposition of consecutive sentences. 730 ILCS 5/5-8-4(a) (West 1993). However, 730 ILCS 5/5-8-4(a) and(b) contain an exception to that rule and makes consecutive sentences mandatory for defendants convicted of multiple offenses which either did or did not occur during a single course of conduct during which there was no substantial change in the nature of the criminal objective, and where as here one of the offenses was brought under section 12-14 of the Criminal Code. The trial court here it is apparent imposed a consecutive sentence based on the mandatory consecutive sentencing provisions of section 5-8-4. (C. 119; Vol. IV, R. 21-22)

The Illinois consecutive sentencing statute bears the same constitutional defects as the New Jersey statute invalidated in *Apprendi*. The holding in *Apprendi* makes clear that the statute is invalid because it violates a defendant's constitutional rights by permitting an increase in the penalty for an offense beyond that of the statutory maximum based on facts that are not pled before trial, submitted to a jury, or proved beyond a reasonable doubt. U.S. Const., amends. V, VI, XIV; *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).

-20-

In *People v. Carney*, 196 Ill.2d 518, 752 N.E.2d 1137 (2001), the Supreme Court found mandatory consecutive sentencing under 730 ILCS 5/5-8-4(a) constitutional. *See People v. Wagener*, 196 Ill.2d 269, 752 N.E.2d 430 (2001)(same on discretionary consecutive sentencing). The reasoning is flawed. The *Carney* court suggests that consecutive terms do not necessarily increase a sentencing term but affect only the manner that the sentences are to be served. If that is true, then the question remains as to the purpose of consecutive sentencing in the first instance. The obvious purpose of consecutive sentencing is to impose greater punishment upon defendants who qualify under the Unified Code of Corrections. *People v. Latona*, 184 Ill.2d 260, 703 N.E.2d 901, 907 (1998). There can be no rational purpose otherwise.

Finally, the pre-trial notice requirements, and required allegations in the indictment, clearly remained fundamentally faulty as matter of constitutional law here. For all these reasons, this Honorable Court should vacate the sentences imposed and remand the cause for concurrent sentences accordingly.

## CONCLUSION

For the aforementioned reasons, it is respectfully requested that this Honorable Court reverse and remand the cause for a new trial. Alternatively, this Honorable Court should vacate the robbery conviction and sentence, and/or remand the cause for imposition of concurrent sentences.

Respectfully submitted,

DANIEL D. YUHAS
Deputy Defender
Office of the State Appellate Defender
Fourth Judicial District
400 South Ninth Street, Suite 102
P.O. Box 5750
Springfield, IL 62705-5750
(217) 782-3654

LAWRENCE J. ESSIG
Assistant Defender

COUNSEL FOR DEFENDANT-APPELLANT

NO.   4-02-0435

IN THE

APPELLATE COURT OF ILLINOIS

FOURTH JUDICIAL DISTRICT

| | |
|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) Appeal from the Circuit Court of |
| Plaintiff-Appellee, | ) the Sixth Judicial Circuit |
| | ) Macon County, Illinois |
| vs. | ) |
| | ) No.  01-CF-971 |
| MARQUIS RIDLEY, | ) |
| | ) Honorable |
| Defendant-Appellant. | ) John K. Greanias |
| | ) Judge Presiding. |

BRIEF AND ARGUMENT FOR PLAINTIFF-APPELLEE

Scott Rueter
State's Attorney
Macon County Courts Facility
253 East Wood
Decatur, Illinois  62523

Norbert J. Goetten
Director
Robert J. Biderman
Deputy Director
Denise M. Ambrose
Staff Attorney
State's Attorneys Appellate
        Prosecutor
725 South Second Street
Springfield, Illinois  62704
(217) 782 - 8076

COUNSEL FOR PLAINTIFF-APPELLEE

EXHIBIT B

*People* v. *Dennis*, 181 Ill.2d 87, 229 Ill.Dec. 552,
692 N.E.2d 325 (1998) . . . . . . . . . . . . 11

*People* v. *Ross*, 329 Ill.App.3d 872, 264 Ill.Dec.
116, 769 N.E.2d 953 (1st Dist. 2002), *appeal
denied*, 201 Ill.2d 604 (Ill. Oct. 2, 2002)
(Table No. 94315) . . . . . . . . . . . . . . 12

*People* v. *Rybka*, 16 Ill.2d 394, 158 N.E.2d 17
(1959) . . . . . . . . . . . . . . . . . . . 12

*Strickland* v. *Washington*, 466 U.S. 668, 104 S.Ct.
2052, 80 L.Ed. 2d 674 (1984) . . . . . . . . . 13

*Bell* v. *Cone*, 535 U.S. 685, 122 S.Ct. 1843,  152
L.Ed. 2d 914 (2002) . . . . . . . . . . . 13, 14

*People* v. *Hattery*, 109 Ill.2d 449, 94 Ill.Dec. 514,
488 N.E.2d 513 (1985) . . . . . . . . . . 14, 15

*People* v. *Chandler*, 129 Ill.2d 233, 135 Ill.Dec.
543, 543 N.E.2d 1290 (1989) . . . . . . . 14, 15, 16

*People* v. *Lewis*, 240 Ill.App.3d 463, 182 Ill.Dec.
139, 609 N.E.2d 673 (1st Dist. 1992), *appeal
denied*, 148 Ill.2d 649, 183 Ill.Dec. 26, 610
N.E.2d 1270 (1993) . . . . . . . . . . . . 14, 17

*People* v. *Shatner*, 174 Ill.2d 133, 220 Ill.Dec.
346, 673 N.E.2d 258 (1996), *cert*. *denied*,
*Shatner* v. *Illinois*, 520 U.S. 1231, 117 S.Ct.
1825, 137 L.Ed. 2d 1032 (1997) . . . . . 17, 18, 19, 25

ii

People v. Williams, 192 Ill.2d 548, 249 Ill.Dec.

    563, 736 N.E.2d 1001 (2000) . . . . . . . . . . 17, 20

People v. Madison, 334 Ill.App.3d 680, 268 Ill.Dec.

    390, 778 N.E.2d 376 (5th Dist. 2002), appeal

    denied, ___ N.E.2d ___ (Ill. Feb. 5, 2003)

    (Table No. 95161) . . . . . . . . . . 17, 21, 22, 23

720 ILCS 5/12-14(a)(4)(West 2001) . . . . . . . . . . . 3

720 ILCS 5/18-1(a)(West 2001) . . . . . . . . . . . . . 3

720 ILCS 5/12-4(a)(West 2001) . . . . . . . . . . . . . 3

720 ILCS 5/12-4(b)(1)(West 2001) . . . . . . . . . . . 3

720 ILCS 5/5-2(c)(West 2001) . . . . . . . . . . . . . 9

720 ILCS 5/5-2(c)(3)(West 2001) . . . . . . . . . . . 11

II

DEFENDANT'S CONVICTION AND SENTENCE FOR ROBBERY

SHOULD BE VACATED BECAUSE THE OFFENSE OF CRIMINAL

SEXUAL ASSAULT WAS ENHANCED TO AGGRAVATED CRIMINAL

SEXUAL ASSAULT BASED ON ITS COMMISSION DURING THE

FELONY OF ROBBERY, BUT THE CAUSE SHOULD BE REMANDED

TO THE CIRCUIT COURT TO ORDER THE 5-YEAR SENTENCE

IMPOSED FOR AGGRAVATED BATTERY TO RUN CONSECUTIVELY

TO THE 30-YEAR SENTENCE IMPOSED FOR AGGRAVATED CRIMINAL

SEXUAL ASSAULT BECAUSE SECTION 5-8-4 OF THE UNIFIED

CODE OF CORRECTIONS MANDATES THAT DEFENDANT

iii

RECEIVE CONSECUTIVE SENTENCES . . . . . . . . . . . . . . 26

People v. Reed, 177 Ill.2d 389, 226 Ill.Dec. 801,

   686 N.E.2d 584 (1997) . . . . . . . . . . . . . . 26

People v. Whipple, 237 Ill.App.3d 880, 178 Ill.Dec.

   454, 604 N.E.2d 977 (3rd Dist. 1992) . . . . . . . 26

People v. Baldwin, 199 Ill.2d 1,  262 Ill.Dec. 9,

   764 N.E.2d 1126 (2002) . . . . . . . . . . . . . . 28

People v. Conerty, 296 Ill.App.3d 459, 231 Ill.Dec.

   125, 695 N.E.2d 898 (4th Dist. 1998), appeal

   denied, 179 Ill.2d 595, 235 Ill.Dec. 569, 705

   N.E.2d 442 (1998) . . . . . . . . . . . . . . . . 28

People v. Russell, 234 Ill.App.3d 684, 175 Ill.Dec.

   744, 600 N.E.2d 1202 (2nd Dist. 1992), appeal

   denied, 148 Ill.2d 651, 183 Ill.Dec. 29, 610

   N.E.2d 1273 (1993) . . . . . . . . . . . . . . . . 29

People v. Harris, ___ Ill.2d ___, ___ Ill.Dec. ___,

   ___ N.E.2d ___ , 2003 WL 164659, at 3 (No. 91392,

   Jan 24, 2003) . . . . . . . . . . . . . . . . . . 29

720 ILCS 5/12-14(a)(4)(West 2001) . . . . . . . . . . 27

720 ILCS 5/18-1 (West 2001) . . . . . . . . . . . . . 27

720 ILCS 5/2-9(a)(West 2001) . . . . . . . . . . . . . 27

730 ILCS 5/5-8-4(a)(ii)(b)(West 2001) . . . . . . . . 29

iv

III

DEFENDANT HAS FORFEITED HIS <u>APPRENDI</u> CONTENTION
AND <u>APPRENDI</u> CONCERNS ARE NOT IMPLICATED BY
CONSECUTIVE SENTENCING . . . . . . . . . . . . . . . 30

<u>Apprendi</u> v. <u>New Jersey</u>, 530 U.S. 466, 120 S.Ct.
    2348, 147 L.Ed. 2d 435 (2000) . . . . . . . . . . 30

<u>People</u> v. <u>Abdullah</u>, ___ Ill.App.3d ___, ___ Ill.Dec.
    ___, ___ N.E.2d ___, 2002 WL 31744731, at 11
    (4th Dist. No. 4-00-0568, Dec. 2, 2002) . . . . . . 30

<u>United States</u> v. <u>Cotton</u>, 535 U.S. 625, 122 S.Ct. 1781
    152 L.Ed. 2d 860 (2002) . . . . . . . . . . . . . 30

<u>People</u> v. <u>Harris</u>, ___ Ill.2d ___, ___ Ill.Dec. ___,
    ___ N.E.2d ___, 2003 WL 164659, at 5 (No. 91392,
    Jan 24, 2003) . . . . . . . . . . . . . . . . . 30

<u>People</u> v. <u>Wagener</u>, 196 Ill.2d 269, 256 Ill.Dec.
    550, 752 N.E.2d 430 (2001) . . . . . . . . . . . 30

<u>People</u> v. <u>Carney</u>, 196 Ill.2d 518, 256 Ill.Dec.
    895, 752 N.E.2d 1137 (2001) . . . . . . . . . 30, 31

730 ILCS 5/5-8-4(b)(West 2001) . . . . . . . . . . . . 30

## NATURE OF THE CASE

Following a jury trial in the circuit court of Macon County on February 25 and 26, 2002, the defendant, Marquis Ridley, was found guilty of aggravated criminal sexual assault, robbery, and aggravated battery. On April 10, 2002, the court sentenced defendant to concurrent term of 30 years' and 5 years' imprisonment for aggravated criminal sexual assault, and aggravated battery, respectively, and to a consecutive term of 7 years' imprisonment for robbery. The court ordered these sentences to run consecutively to the 4-year concurrent sentences defendant was serving for aggravated battery (Macon County No. 98-CF-896) and attempt aggravated robbery (Macon County No. 99-CF-77). Defendant's post-sentencing motion was denied on April 24, 2002. Defendant filed notice of appeal on April 26, 2002.

ARGUMENT

I

DEFENDANT WAS NOT DENIED THE SIXTH AMENDMENT RIGHT TO THE
EFFECTIVE ASSISTANCE OF COUNSEL BECAUSE COUNSEL DID NOT
CONTEST THE FACTUAL RELIABILITY OF DEFENDANT'S STATEMENT THAT
HE ACTED AS A LOOKOUT FOR THE ROBBERY.  COUNSEL PRESENTED THE
DEFENSE THAT DEFENDANT WITHDREW FROM THE CRIMINAL ENTERPRISE
WHEN THE ROBBERY WAS COMPLETED AND THAT DEFENDANT WAS NOT
ACCOUNTABLE FOR THE AGGRAVATED BATTERY AND CRIMINAL SEXUAL
ASSAULT.

Defendant's initial contention on appeal is that he was
denied the effective assistance of counsel because his
attorney misunderstood the law of accountability and
guaranteed his conviction of aggravated battery and aggravated
criminal sexual assault by conceding defendant's guilt of
robbery, which was unnecessary because S.M. could not identify
any of the four assailants.  Defendant argues that counsel
failed to subject the State's case to meaningful adversarial
testing and that prejudice must be presumed in his case under
United States v. Cronic, 466 U.S. 648, 659, 104 S.Ct. 2039,
2047, 80 L.Ed. 2d 657 (1984).

2

## THE FACTS

Defendant was jointly charged in an information with Dustin Chenoweth and Demarco Hill with robbery, aggravated criminal sexual assault, and two counts of aggravated battery of S.M. (R. Vol. I, C3-C6) Count I of the information alleged that defendants committed aggravated criminal sexual in that they committed a criminal sexual assault of S.M. during the commission of robbery, in violation of section 12-14(a)(4) of the Criminal Code of 1961 (720 ILCS 5/12-14(a)(4)(West 2001)). Count II alleged the commission of robbery by taking U.S. currency from S.M. by the use of force, in violation of section 18-1 of the Criminal Code (720 ILCS 5/18-1(a)(West 2001)). (R. Vol. I, C4) Count III alleged that defendants committed aggravated battery by intentionally causing great bodily harm to S.M. (720 ILCS 5/12-4(a)(West 2001)), and Count IV alleged that defendants committed aggravated battery by using a deadly weapon, a tire iron, and intentionally caused bodily harm to S.M. (720 ILCS 5/12-4(b)(1)(West 2001)). (R. Vol. I, C5-C6)

In opening statement, defense counsel told the jury that the evidence would show that defendant participated solely as a lookout to robbery, and that he fled from the scene and "quit participating" before S.M. was sexually assaulted. (R. Vol. II, 11-12)

3

S.M. testified that on July 11, 2001, she was waiting for the two men, one black and one white, to pay her for the pizza when a black male came up behind her. (R. Vol. II, 38-39, 42) When she turned around again, one of the two men in front of her struck her eye, causing her to fall face down in the driveway. (R. Vol. II, 40) One of the men pressed his knee against her back and asked her where the money was. (R. Vol. II, 40) The man's voice sounded like that of a black male. (R. Vol. II, 57) S.M. could hear someone open the doors of her vehicle and rummage through her car. (R. Vol. II, 40) S.M. told them that there was money in the glove compartment and her purse and a cell phone in the car. (R. Vol. II, 40-41) The man released his knee, rolled S.M. over, rummaged through her pockets for money, and rolled her over again so she was face down. (R. Vol. II, 40) After the men searched her car, someone said, "You got it," and two men replied, "Yes." (R. Vol. II, 42)

One man then grabbed her hair and the back of her jeans and dragged her to the back of the house, where it was "completely dark." (R. Vol. II, 41-42, 47) He said, "Do you want to do this." (R. Vol. II, 42) Her next memory was of lying naked in the backyard of the residence. (R. Vol. II, 42) She did not remember who removed her clothing. (R. Vol. II, 43) One of the black males then had sexual intercourse with

4

her. (R. Vol. II, 43-44) He demanded that she open her mouth so he could ejaculate inside it, but she refused, and he ejaculated on her neck. (R. Vol. II, 44) After he was finished with her, "they" rolled her over, face down on the ground, and discussed something for "a while, [that] seemed like forever." (R. Vol. II, 44-45) S.M. said that "they" then started kicking her. (R. Vol. II, 45) She could not say exactly how many men were kicking her, but there were "a lot of feet" kicking her. (R. Vol. II, 45) Someone also struck the back of her head at least three times with a hard, cold object that could have been a tire iron. (R. Vol. II, 45) She then heard one of the men say, "Okay, walk, don't run." (R. Vol. II, 46) When she no longer heard voices, she arose from the ground, grabbed her clothing, and ran for help. (R. Vol. II, 46)

S.M. sustained three lacerations to her skull, a black eye, lacerations to her nose and forearm, a broken rib, and a collapsed lung. (R. Vol. II, 49) She was hospitalized for two days. (R. Vol. II, 49) Due, in part, to the severity of her injuries, particularly those to her head, S.M. was unable to identify any of her assailants. (R. Vol. II, 44, 49-50)

On cross-examination, S.M. said that she did not see any vehicles parked on the street in front of the residence at 1st South Shores Drive, and that there were no vehicles in the driveway, other than hers. (R. Vol. II, 51-53) She did not

hear a car engine starting or any cars driving in the vicinity when she fled from the backyard. (R. Vol. II, 58) She could not describe her assailants other than by race. (R. Vol. II, 54-55, 58-59)

Defendant was arrested for these crimes in the early morning hours of July 14, 2001. After Detective Jeremy Welker advised defendant of his <u>Miranda</u> rights, defendant told Welker that he would not participate in a question and answer session, but wanted to give a handwritten statement. (R. Vol. II, 61-63) Welker provided defendant a voluntary statement form and left the interview room while defendant wrote his statement. (R. Vol. II, 63-64) Defendant's initial statement read as follows:

> To whom this letter reads, I Marquis, obviously being wrongfully accused of all charges were read to me. I haven't the slightest idea why any of those 3 would put me in their problem. I am in enough trouble as is. I was not there as they claim. I had nothing to do with this shit.

> (R. Vol. II, 64-65)

When Welker told defendant that he had information that defendant was present during the crimes, defendant stated that he had acted as a lookout when the robbery occurred and that the principal actors were Dustin Chenoweth, a white male, and two black males who were related to defendant: Demarco Hill and Marcellus Jarrett. (R. Vol. II, 65, 70) Defendant said

6

that he did not witness everything that occurred because it was dark and his attention was directed toward the street, to make certain that no one approached when S.M. was being robbed. (R. Vol. II, 66) Defendant said that during those times that he turned his head toward the house, he saw S.M. exit her vehicle, S.M. falling backwards, as though someone had hit her, someone standing over S.M., and then someone taking her around the side of the house. (R. Vol. II, 66-67) Defendant left the area and walked to Dustin's vehicle that was parked "a short ways down the street." (R. Vol. II, 67) He waited at the car for a few minutes, but walked back to the house on South Shores when no one else showed up. (R. Vol. II, 67) When he approached the house, he found Dustin sitting on the front porch. (R. Vol. II, 67) Defendant and Dustin walked to the car and waited there until Demarco and Marcellus arrived. (R. Vol. II, 67) Defendant then gave a second written statement which read:

> All we planned on was taking the $. It was dark in on the side the house watching out, so all I see is her fall. I don't know who exactly was standing over her. So they take her on side of the house, so I run to the car. But didn't nobody else come with me. So I come back to see what's taking so long. Dustin is standing on the porch, and he tell me to just stay with him, and by that time, Cellus was at the car. Like right after that we left. I never touched or hurt her in any way. So while this case is being tried, <u>please</u> <u>try</u> <u>to</u> <u>remember</u> <u>that</u>.
>
> (R. Vol. II, 68-69)

7

Defendant did not present any evidence. (R. Vol. II, 75-76) The jury received instructions on accountability and withdrawal. I.P.I. Criminal Nos. 5.03, 5.04 (4th ed. 2000). (R. Vol. I, C74, C75)

In closing statement, defense counsel declined to address the robbery charge because there was no evidence that defendant did not give the written statements to Detective Welker, and in his second statement, he admitted that he acted as a lookout in the robbery. (R. Vol. III, 20-21) Counsel argued that the only crime defendant intended to occur was the robbery, and that the robbery was completed at the front of the house, when S.M. was struck in the face, one of the principals held her down and searched her pockets, and the other principal actors searched her car for money. (R. Vol. III, 21-25) Counsel stated that there was no proof that S.M. sustained great bodily harm at the front of the house, when defendant was present, and that once he left the scene, he was no longer assisting as a lookout. S.M. was beaten with the tire iron and kicked at the back of the house. (R. Vol. II, 21, 24-28) Counsel told the jury that defendant could not be held responsible for the aggravated criminal sexual assault because that offense was unrelated to the robbery, and was an unplanned, and unintended consequence of the robbery. (R. Vol.

8

II, 23-25) Counsel further suggested that defendant deprived his prior complicity of effectiveness by leaving the scene and going to Dustin's car, which must have been parked a considerable distance away since S.M. did not see or hear any cars in the vicinity. (R. Vol. II, 25-27)

## ANALYSIS

Under Illinois law, a person is legally accountable for the conduct of another when "[e]ither before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense."  720 ILCS 5/5-2(c)(West 2001); <u>People</u> v. <u>Batchelor</u>, 171 Ill.2d 367, 375, 216 Ill.Dec. 519, 665 N.E.2d 777, 780 (1996).  Section 5-2(c) of the Code does not require that a person to be held accountable intend that the principal commit the offense for which accountability is sought.  <u>People</u> v. <u>Cole</u>, 253 Ill.App.3d 603,609, 192 Ill.Dec. 661, 625 N.E.2d 816, 820 (4th Dist. 1993), citing <u>People</u> v. <u>Terry</u>, 99 Ill.2d 508, 515, 77 Ill.Dec. 442, 460 N.E.2d 746, 749 (1984).  The <u>Terry</u> court held that included in section 5-2(c) of the Code is the "common-design rule," which provides that "'where two or more persons engage in a common criminal design or agreement, *any acts* in the furtherance thereof

9

committed by one party are considered to be the acts of all parties to the common design and all are equally responsible for the consequences of such further acts.'" <u>Cole</u>, 253 Ill.App.3d at 609, 625 N.E.2d at 820-821 (Emphasis added), quoting <u>Terry</u>, 99 Ill.2d at 514, 460 N.E.2d at 749. The effect of <u>Terry</u> is to interpret the phrase "with the intent to promote or facilitate such commission" as meaning "planning or commission of *an* offense." <u>Cole</u>, 253 Ill.App.3d at 609, 625 N.E.2d at 821 (Emphasis in original). Thus, the offense which a defendant may intend to "promote" or "facilitate" need not be the offense for which he is convicted by accountability. <u>Cole</u>, 253 Ill.App.3d at 609, 625 N.E.2d at 821 (Defendant was accountable under section 5-2(c) of the Code for involuntary manslaughter where jury could have found that defendant engaged with principal, who shot and killed the victim, in a common criminal design to commit aggravated assault upon the victim or reckless conduct); <u>Terry</u>, 99 Ill.2d at 515, 460 N.E.2d at 749 (The substantive offense which the group conspired to commit was battery and each person was responsible for the conduct of the other which was done in furtherance of the intended battery; the result of their concerted acts was murder and, under the common-design rule, all are legally accountable for that murder); <u>People</u> v. <u>Jackson</u>, 333 Ill.App.3d 962, 967-968, 267 Ill.Dec. 823, 777

10

N.E.2d 626, 631-632 (1st Dist. 2002)(Defendant did not dispute
that he was guilty of armed robbery and home invasion, but in
reliance on People v. Dennis, 181 Ill.2d 87, 229 Ill.Dec. 552,
692 N.E.2d 325 (1998), claimed that he could not be convicted
of the murders under an accountability theory because he left
the scene before they were committed; court held that whether
defendant was still at the scene at the time of the murders
was irrelevant under either an accountability theory or a
felony murder theory because defendant participated in the
robbery armed with a gun, he could expect that someone would
be shot, and even if he left the apartment with the money
before the shootings, his accomplice continued using force,
which resulted in the murders, and the armed robbery was not
complete until the accomplice's use of force ended).

A defendant will not be held accountable for the conduct
of another if, "[b]efore the commission of the offense, he
terminates his effort to promote or facilitate such
commission, and does one of the following: wholly deprives his
prior efforts of effectiveness in such commission, or gives
timely warning to the proper law enforcement authorities, or
otherwise makes proper effort to prevent the commission of the
offense."    720  ILCS  5/5-2(c)(3)(West  2001).  It  is  the
communication of intent, not the naked fact of withdrawal,
that  determines  whether  a  defendant  is  released  from

11

accountability liability. <u>People</u> v. <u>Ross</u>, 329 Ill.App.3d 872, 886, 264 Ill.Dec. 116, 769 N.E.2d 953, 966 (1st Dist. 2002), <u>appeal denied</u>, 201 Ill.2d 604 (Ill. Oct. 2, 2002)(Table No. 94315), citing <u>People</u> v. <u>Rybka</u>, 16 Ill.2d 394, 406, 158 N.E.2d 17 (1959).

In <u>Ross</u>, defendant, a gang coordinator in charge of juvenile members, initiated a plan to rob a convenience store, gave instructions to the younger gang members under his supervision, and revealed the location of the gun to be used in the crime. Defendant's attendance at school prevented him from being present during the robbery. Because defendant failed to meet the others as planned, he requested that the jury be instructed on withdrawal, as his failure to participate could be taken as a communication of his intent to withdraw. The majority upheld the trial court's refusal to instruct on withdrawal because there was no record evidence of an essential component of withdrawal: wholly depriving one's earlier efforts of effectiveness. <u>Ross</u>, 329 Ill.App.3d at 887, 769 N.E.2d at 967.

Because defendant was accountable for the aggravated battery and aggravated criminal sexual assault under the common-design rule, and his departure from the scene when the crime was already underway did not constitute withdrawal, defendant argues that the defense put forth by his attorney

12

provided no meaningful adversarial testing to the State's case and prejudice must be presumed. In the event that counsel's conduct does not fall under the <u>Cronic</u> standard, defendant maintains that counsel's performance was ineffective under <u>Strickland</u> v. <u>Washington</u>, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed. 2d 674 (1984), which requires a defendant to establish that his counsel's performance was so seriously deficient as to fall below an objective standard of reasonableness, and that the deficient performance so prejudiced defendant as to deny him a fair trial. <u>Strickland</u>, 466 U.S. at 687-688, 104 S.Ct. at 2064.

There are exceptional circumstances when the two-part <u>Strickland</u> test need not be applied. Where counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of sixth amendment rights that makes the adversary process itself presumptively unreliable, and in those instances, ineffectiveness of counsel will be established without application of the <u>Strickland</u> test. <u>Cronic</u>, 466 U.S. at 659, 104 S.Ct. at 2047, 80 L.Ed. 2d at 668. The Supreme Court recently explain that "[w]hen we spoke in <u>Cronic</u> of the possibility of presuming prejudice based on an attorney's failure to test the prosecutor's case, we indicated that the attorney's failure must be complete." <u>Bell</u> v. <u>Cone</u>, 535 U.S.

13

685, 122 S.Ct. 1843, 1851, 152 L.Ed. 2d 914, 928 (2002)(Holding that the principles of Strickland governed because defendant's claim was that counsel failed to present mitigating evidence and waived final argument at the capital sentencing hearing, and not that he failed to oppose the prosecution throughout the sentencing proceeding as a whole).

Defendant argues that counsel's performance in this case is analogous to the legal representation in People v. Hattery, 109 Ill.2d 449, 94 Ill.Dec. 514, 488 N.E.2d 513 (1985), People v. Chandler, 129 Ill.2d 233, 135 Ill.Dec. 543, 543 N.E.2d 1290 (1989), and People v. Lewis, 240 Ill.App.3d 463, 182 Ill.Dec. 139, 609 N.E.2d 673 (1st Dist. 1992), appeal denied, 148 Ill.2d 649, 183 Ill.Dec. 26, 610 N.E.2d 1270 (1993).

In Hattery, defense counsel advanced no theory of defense to the murder charges, presented no evidence, and chose not to make a closing statement to the jury. They unequivocally conceded defendant's guilt and told the jury that the only issue to be decided was whether defendant should receive the death penalty. Our supreme court found that counsels' trial strategy was totally at odds with defendant's not guilty plea and that there was no evidence that defendant consented to his attorneys' strategy. The court thus held that "counsel's actions deprived defendant of the right of having the issue of his guilt or innocence presented to the jury as an adversarial

14

issue."  <u>Hattery</u>, 109 Ill.2d at 464, 488 N.E.2d at 519.

In <u>Chandler</u>, defendant and his codefendant were charged with murder, residential burglary, and aggravated arson. Defendant told the police that he and his codefendant broke into the victim's home, and that the codefendant stabbed the victim in her upstairs' bedroom while defendant was downstairs ransacking the premises.  Defendant stated that they both then took some items from the house and later set the house on fire.  <u>Chandler</u>, 129 Ill.2d at 237, 543 N.E.2d at 1291. Defense counsel presented no witnesses, and defendant did not testify, despite counsel's representation to the jury in his opening statement that defendant would testify at trial. <u>Chandler</u>, 129 Ill.2d at 238, 543 N.E.2d at 1291.  In both opening and closing statements, defense counsel conceded that defendant entered the victim's house, but that defendant was not guilty of murder because his codefendant stabbed the victim.  The supreme court held that counsel's representation did not fall under the <u>Hattery</u> rule because:

> Counsel admitted only what defendant had already confessed to, and the jury heard a police officer testify to defendant's statements.  Counsel vigorously argued that the jury should believe everything that defendant told the police, including defendant's denial of killing the victim, and did not concede any fact to which defendant did not admit in his statements to the police.  We have held that similar admissions by counsel do not fall under the <u>Hattery</u> rule.  See <u>People</u> v. <u>Emerson</u>

(1987), 122 Ill.2d 411, 428-31, 119 Ill.Dec. 250, 522 N.E.2d 1109.

Chandler, 129 Ill.2d 245-246, 543 N.E.2d at 1295.

The Chandler court, however, found counsel's representation deficient under Strickland because counsel apparently mistakenly believed that the jury could find defendant not guilty of murder if they believed that he had not inflicted the fatal wounds to the victim, whereas the jury had no choice to find defendant guilty of murder, residential burglary, and arson pursuant to the jury instructions on felony murder and accountability. Chandler, 129 Ill.2d at 246-247, 543 N.E.2d at 1295-1296. The court also found that counsel did not attempt to develop a theory of innocence during his cross-examination of several witnesses, did not cross-examine several key witnesses, and failed to call defendant to the stand even though he had stated in his opening argument that defendant would testify and tell the jury what he did and did not do. Chandler, 129 Ill.2d at 246-247, 543 N.E.2d at 1295. The court concluded that "counsel's strategy and actions amounted to no real defense at all," and deprived defendant of a fair trial. Chandler, 129 Ill.2d at 249, 543 N.E.2d at 1296.

The court in Lewis found that defendant was denied the effective assistance of counsel because of cumulative

16

deficiencies that prejudiced defendant: failing to tender an accomplice witness instruction, basing his defense on defendant's post-arrest statement, which was subject to objection on hearsay grounds, failing to move to sever the two charges of murder when the murders occurred at different locations and on different days and counsel raised markedly different defense to the two murder charges, and pursuing a theory of defense which left the jury no choice but to convict defendant of one murder, as it was immaterial whether defendant or his accomplice inflicted the fatal wound. Lewis, 240 Ill.App.3d at 467-470, 609 N.E.2d at 676-678.

Counsel's conduct in this case is more like that of the attorneys in People v. Shatner, 174 Ill.2d 133, 220 Ill.Dec. 346, 673 N.E.2d 258 (1996), cert. denied, Shatner v. Illinois, 520 U.S. 1231, 117 S.Ct. 1825, 137 L.Ed. 2d 1032 (1997), People v. Williams, 192 Ill.2d 548, 249 Ill.Dec. 563, 736 N.E.2d 1001 (2000), and People v. Madison, 334 Ill.App.3d 680, 268 Ill.Dec. 390, 778 N.E.2d 376 (5th Dist. 2002), appeal denied, ___ N.E.2d ___ (Ill. Feb. 5, 2003)(Table No. 95161), than in the cases defendant cites.

In Shatner, defendant was charged with first degree murder, armed robbery, and arson. The defendant gave a statement in which he admitted that Jean Rogoz, a woman to whom he was attracted, pressured him to commit a robbery and

17

that he assisted Rogoz in carrying out the robbery scheme by grabbing the victim around the throat and dragging him into the bedroom.  Defendant said that Rogoz was the one who struck the victim in the head and set his apartment on fire. <u>Shatner</u>, 174 Ill.2d at 141, 673 N.E.2d at 261.  Defense counsel told the jury that defendant's statement was the "correct version of what happened," and that "if he's guilty of anything, he guilty of robbery," and that it would be a tragedy to convict defendant of murder while Rogoz walked out "Scot-free."  <u>Shatner</u>, 174 Ill.2d at 143, 673 N.E.2d at 262. The supreme court found no analogy between the tactics of defendant's attorney and that of counsel in <u>Hattery</u> because defendant's attorney "presented both opening and closing arguments; cross-examined virtually all of the State's witnesses; presented several witnesses, including the defendant, on the defendant's behalf; objected often and strenuously to the admission of adverse evidence; and moved for a mistrial on several occasions."  <u>Shatner</u>, 174 Ill.2d at 145-146, 673 N.E.2d at 263.  The court also found no ineffective assistance of counsel under <u>Chandler</u>, reasoning as follows:

> In contrast, defense counsel in the instant case aggressively cross-examined virtually every witness for the prosecution and called several witnesses on defendant's behalf in an effort to undermine the credibility of the State's witnesses and to bolster

that of the defendant.    Ultimately, it was the
defendant's own statements, both to the FBI and on
the witness stand, and not the actions or strategy
of his counsel, which undermined any claim of
innocence that defendant may have had.    If a
defendant enters a not-guilty plea in the face of
overwhelming evidence of his guilt, we are
unwilling to find that his counsel was ineffective
simply because he failed to contrive a leak-proof
theory of innocence on defendant's behalf.    To do
so would effectively require defense attorneys to
engage in fabrication or subterfuge.

Here, defense counsel sought to minimize his
client's admitted involvement in the robbery scheme
and to shift the blame for the robbery and murder
onto Jean Rogoz, who had voluntarily accompanied
defendant to the crime scene. Defense counsel
aggressively attacked the credibility of Jean Rogoz
and portrayed her as a calculating cocaine addict
who seduced defendant into assisting her in a
robbery during which she killed the victim.    It is
apparent that defense counsel sought to convince
the jury that defendant's minimal involvement in
the scheme warranted either a finding of innocence
or a conviction for robbery only.    While this
strategy was risky, it was strategy nonetheless,
and perhaps the only strategy which could have been
seriously pursued given defendant's admissible
incriminating statements and the overwhelming
evidence of his guilt. Defendant now contends that
his trial counsel should have presented a
reasonable doubt theory, *i.e.*, defendant played no
role whatsoever in the crime which Jean Rogoz
perpetrated.    However, it is arguable that that
strategy would have been even less credible and
less likely to succeed than the one his attorney
actually pursued.    Under the circumstances of this
case, defense counsel's performance was not
deficient with respect to his proffered defense
theory.

Shatner, 174 Ill.2d at 147-148, 673 N.E.2d at 264-
265.


In Williams, defendant was charged with first degree

19

murder, aggravated kidnaping, and armed robbery. Defendant
gave a statement in which he admitted that his business
partners and other people who were attending a party beat the
victim after she tried to steal several rocks of cocaine.
Defendant admitted hitting the victim but claimed that he did
so only because she had hit him while she was being beaten by
the others. Once the victim was unconscious, defendant put
the victim in the trunk of her car. Defendant and another man
drove the vehicle to a location where the other male shot the
victim as defendant waited in the car. <u>Williams</u>, 192 Ill.2d at
559-560, 736 N.E.2d at 1008-1009. As in <u>Shatner</u>, defense
counsel in opening and closing argument told the jury that
defendant's statement to the police was truthful and accurate.
<u>Williams</u>, 192 Ill.2d at 565, 736 N.E.2d at 1011. The court
determined that there was no breakdown of the adversarial
process because defense counsel aggressively cross-examined
the State's witnesses, argued for a not-guilty verdict on
murder and armed robbery in opening and closing statements,
and moved to suppress defendant's statement during pretrial
proceedings. <u>Williams</u>, 192 Ill.2d at 566-567, 736 N.E.2d at
1012. The court then found that counsel's performance was not
ineffective under <u>Strickland</u> as "defendant was convicted by
his own statement, not by his counsel's struggles against the
substantial evidence against him." <u>Williams</u>, 192 Ill.2d at

20

569, 736 N.E.2d at 1013.

In <u>Madison</u>, defendant and his cohort, John Pickens, were charged with armed robbery, two attempted first degree murders, and two aggravated batteries with a firearm. The State introduced defendant's self-serving statement to the police that before he agreed to take part in the robbery, he told Pickens that he did not want anyone to get hurt. Defendant said that when he entered the used car dealership, he announced that no one would get hurt and that it came as a total and unexpected surprise when Pickens shot the two employees in the head and back. Defendant said that he had armed himself with an inoperable .32-caliber handgun. <u>Madison</u>, 334 Ill.App.3d at 683, 778 N.E.2d at 378-379. Defense counsel told the jurors that the State could not prove that defendant shared guilt for everything that Pickens did because defendant did not plan to shoot the armed robbery victims, he did not expect a shooting to occur, and he had completed his sole criminal objective before any shooting started. <u>Madison</u>, 334 Ill.App.3d at 687, 778 N.E.2d at 381. The court observed that defendant court not legitimately make the argument that counsel provided ineffective assistance under <u>Strickland</u> because "[w]ith the insurmountable amount of evidence that the defendant provided to the State, it is hard to imagine how the outcome in this case would ever change, no

21

matter how well defense counsel performed." <u>Madison</u>, 334
Ill.App.3d at 686, 778 N.E.2d at 380.   The court then held
that the actions of defendant's attorney and that of counsel
in <u>Chandler</u> were "worlds apart" because counsel filed numerous
pretrial motions, cross-examined the State's witnesses, and
"chose the correct, and only, path of defense left open to
him." <u>Madison</u>, 334 Ill.App.3d at 687-688, 778 N.E.2d at 382.
The court rejected defendant's claim that counsel failed to
comprehend the law of accountability, reasoning as follows:

> Furthermore, the defendant is simply wrong when he
> maintains that his lawyer's stance was at odds with
> the law of accountability in this state.   Unlike
> the defense attorney in <u>People</u> v. <u>Chandler</u>, this
> attorney knew how the law of accountability
> functioned, and he fashioned his defense to comport
> with it.   He understood that the accountability
> statute would assign criminal responsibility for
> Pickens' acts, if done in furtherance of the armed
> robbery and as a part of a common criminal design
> to commit that crime.   Counsel demonstrated
> awareness of the fact that the efficacy of the
> defendant's claims depended upon convincing the
> jury that the agreed-upon armed robbery was
> completed before any shootings occurred.   When he
> emphasized his client's claims, a lack of intent to
> kill or hurt anyone, and coupled them to a lack of
> actual participation in the shootings, counsel knew
> how they would prove germane to the inquiry.   He
> had to persuade the jury that the common criminal
> venture was over, its objectives having been
> achieved, before the shooting started.
>
> Defense counsel tried to convince the jury not only
> that the defendant was a nonparticipant in the
> shootings but that his responsibility for them
> ended with the completion of his sole criminal
> objective.   He reminded the jurors that the law
> only assigns criminal responsibility for another's

acts if aid and assistance is given either before
or during the commission of the crime. He then
maintained that leaving the car dealership and
driving the getaway car was assistance rendered
after the armed robbery was complete. It was not
an act that would allow the shootings to be
considered a part of the armed robbery.

To be sure, the defense was factually imperfect.
Pickens and defendant could hardly drive off in a
dealership car without furthering the ongoing
objective of robbery. The common design was
incomplete, and still in play, when the shootings
occurred. This factual deficiency in the defense
does not allow us to conclude that the defense was
tantamount to no defense at all. Defense counsel
offered the jury a construction of the facts that
would allow it to return favorable verdicts.
Jurors who believed the defendant's claims that he
did not buy into murder, and who were hesitant to
assign guilt for serious crimes in which he did not
actually engage, were given a way to reach a
verdict of not guilty. The fact that they
correctly rejected the notion that the car was
effectively taken, and the robbery was complete,
when the car keys were selected and in the
defendant's possession only confirms how hard a
case this was to defend. It does not mean that
counsel failed to subject the State's case to an
adversarial test that was meaningful.

The defendant was not deprived of his
constitutional right to the effective assistance of
counsel.

Madison, 334 Ill.App.3d at 688-689, 778 N.E.2d at
382-383.

Defense counsel's performance in this case bears no
resemblance to that in Hattery. Counsel agreed only to those
matters to which defendant had already confessed. He made an
opening and closing statement that the offense of robbery, the
only crime to which defendant agreed and assisted, was

complete before the aggravated battery and sexual assault
occurred.  He cross-examined the victim to underscore the fact
that she could not identify defendant as anyone who actively
participated in the crimes, particularly the battery and
sexual assault, and that she did not see or hear any vehicles,
other than hers, in the vicinity of the crime scene, meaning
that defendant put a considerable distance between him and the
others after S.M. was robbed.  He moved for a directed verdict
at the close of the State's case (R. Vol. II, 73), and
apprised defendant of his right to testify on his own behalf
(R. Vol. II, 76-77).  He also argued that defendant withdrew
from the criminal enterprise before S.M. was sexually
assaulted and beaten and kicked.  Counsel did not completely
fail "throughout" the proceeding "as a whole" to oppose the
State's case, as defined in Cone.

Defense counsel's theory of defense in this case was much
like those put forth in Shatner, Williams, and Madison, and
did not reveal a misunderstanding of the law of
accountability.  Counsel tried to convince the jury that
defendant's criminal liability was limited to the robbery
because the sexual assault and subsequent beating of the
victim at the back of the house were not acts that were the
natural and probable consequence of the robbery.  Counsel
emphasized that defendant had told the police that the sole

24

purpose of the criminal enterprise was on "taking the S" and that defendant was not responsible for the principals' acts that defendant did not intend or anticipate. Defendant maintains that counsel should have attacked the factual reliability of the confession (Deft's brief, 14), but trial counsel stated that there was no evidence that defendant had not given the written statements to Detective Welker (R. Vol. III, 20), and counsel is not required to "engage in fabrication *  *  ." <u>Shatner</u>, 174 Ill.2d at 148, 673 N.E.2d at 264. Counsel's performance was not ineffective under the traditional <u>Strickland</u> test.

ARGUMENT

II

DEFENDANT'S CONVICTION AND SENTENCE FOR ROBBERY SHOULD BE
VACATED BECAUSE THE OFFENSE OF CRIMINAL SEXUAL ASSAULT WAS
ENHANCED TO AGGRAVATED CRIMINAL SEXUAL ASSAULT BASED ON ITS
COMMISSION DURING THE FELONY OF ROBBERY, BUT THE CAUSE SHOULD
BE REMANDED TO THE CIRCUIT COURT TO ORDER THE 5-YEAR SENTENCE
IMPOSED FOR AGGRAVATED BATTERY TO RUN CONSECUTIVELY TO THE 30-
YEAR SENTENCE IMPOSED FOR AGGRAVATED CRIMINAL SEXUAL ASSAULT
BECAUSE SECTION 5-8-4 OF THE UNIFIED CODE OF CORRECTIONS
MANDATES THAT DEFENDANT RECEIVE CONSECUTIVE SENTENCES.

Defendant's second contention is that his conviction and
sentence for robbery must be vacated because it was a lesser-
included offense of the sole count of aggravated criminal
sexual assault based on the commission of sexual assault
during the felony of robbery.

Defendant did not raise this issue in his motion to
reconsider sentence (R. Vol. I, C115-C116), which normally
results in forfeiture of the claim (People v. Reed, 177 Ill.2d
389, 393-394, 226 Ill.Dec. 801, 686 N.E.2d 584, 586 (1997))
absent plain error. People v. Whipple, 237 Ill.App.3d 880,
882, 178 Ill.Dec. 454, 604 N.E.2d 977, 979 (3rd Dist.

1992)(Addressing as plain error whether defendant's robbery convictions were based on some of the same physical acts that formed the basis for the aggravated criminal sexual assault convictions where according to the charges the State filed, the criminal sexual assaults in each of the 5 cases involving 5 separate victims were aggravated because the defendant committed them during the course of committing robbery).

Defendant was charged in one count of the information with aggravated criminal sexual assault, in violation of section 12-14(a)(4) of the Criminal Code of 1961 (720 ILCS 5/12-14(a)(4)(West 2001)), in that he and his codefendants during the commission of robbery, knowingly committed a criminal sexual assault against S.M. in that, by the use of force, they placed their penises in S.M.'s vagina. (R. Vol. I, C3) Count II of the information charged defendant and his codefendants with robbery, in violation of section 18-1 of the Code (720 ILCS 5/18-1 (West 2001)) by taking U.S. currency from S.M. by the use of force. (R. Vol. I, C4)

Section 2-9(a) of the Criminal Code of 1961 (720 ILCS 5/2-9(a)(West 2001)) defines an included offense in pertinent part as an offense that "[i]s established by proof of the same or less than all of the facts or a less culpable mental state (or both), than that which is required to establish the commission of the offense charged." Under the charging

27

instrument approach, courts must examine allegations contained in the charging instrument; an offense is considered a lesser-included offense if it is described by the charging instrument. <u>People</u> v. <u>Baldwin</u>, 199 Ill.2d 1, 8, 262 Ill.Dec. 9, 764 N.E.2d 1126, 1129 (2002).

In <u>People</u> v. <u>Conerty</u>, 296 Ill.App.3d 459, 231 Ill.Dec. 125, 695 N.E.2d 898 (4th Dist. 1998), <u>appeal</u> <u>denied</u>, 179 Ill.2d 595, 235 Ill.Dec. 569, 705 N.E.2d 442 (1998), this court held that home invasion was a lesser-included offense of aggravated criminal sexual assault where one count of the information charged defendant with aggravated criminal sexual assault based on the commission of sexual assault during the commission of home invasion. The basis of the home invasion count was the intentional infliction of injury by means of digital sexual penetration, the same element alleged for aggravated criminal sexual assault. This court thus held that, "as charged in the information, home invasion is an included offense of aggravated criminal sexual assault because every element necessary to prove home invasion is included in the charge offense of aggravated criminal sexual assault." <u>Conerty</u>, 296 Ill.App.3d at 465, 695 N.E.2d at 902.

Thus, as in <u>Conerty</u>, robbery was a lesser-included offense of aggravated criminal sexual assault. However, aggravated battery based on causing great bodily harm to S.M.

was not a lesser-included offense of aggravated criminal sexual assault. Criminal sexual assault was enhanced to aggravated criminal sexual assault based on its commission during the felony of robbery. The count for aggravated criminal sexual assault did not allege the intentional or knowing infliction of great bodily harm. (R. Vol. I, C3) See People v. Russell, 234 Ill.App.3d 684, 688-689, 175 Ill.Dec. 744, 600 N.E.2d 1202, 1205 (2nd Dist. 1992), appeal denied, 148 Ill.2d 651, 183 Ill.Dec. 29, 610 N.E.2d 1273 (1993)(Aggravated battery was not a lesser-included offense of aggravated criminal sexual assault because indictment for aggravated criminal sexual assault did not expressly or implicitly charge defendant with specifically intending to inflict great bodily harm). Consecutive sentencing was mandatory in this case under section 5-8-4 of the Unified Code of Corrections whether defendants' actions arose from separate course of conduct or a single course of conduct. 730 ILCS 5/5-8-4(a)(ii)(b)(West 2001)); People v. Harris, ___ Ill.2d ___, ___ Ill.Dec. ___, ___ N.E.2d ___ , 2003 WL 164659, at 3 (No. 91392, Jan 24, 2003). Accordingly, the cause should be remanded to the circuit court with directions to vacate defendant's conviction and sentence for robbery, but to order the 5-year sentence imposed for aggravated battery to run consecutively to the sentence imposed for aggravated criminal sexual assault.

29

ARGUMENT

III

DEFENDANT HAS FORFEITED HIS <u>APPRENDI</u> CONTENTION AND <u>APPRENDI</u> CONCERNS ARE NOT IMPLICATED BY CONSECUTIVE SENTENCING.

Defendant's final contention is that the consecutive sentencing provisions of section 5-8-4(a)(b) of the Unified Code of Corrections (730 ILCS 5/5-8-4(b)(West 2001)) which require mandatory consecutive sentences on all triggering offenses, whether they were committed in a single course of conduct or separate courses of conduct violate <u>Apprendi</u> v. <u>New Jersey</u>, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed. 2d 435 (2000).

Defendant has forfeited this contention by not raising it in the trial court. (R. Vol. I, C115-C116) <u>People</u> v. <u>Abdullah</u>, ___ Ill.App.3d ___, ___ Ill.Dec. ___, ___ N.E.2d ___, 2002 WL 31744731, at 11 (4th Dist. No. 4-00-0568, Dec. 2, 2002), citing <u>United States</u> v. <u>Cotton</u>, 535 U.S. 625, 122 S.Ct. 1781, 1787, 152 L.Ed. 2d 860, 869 (2002). Furthermore, our supreme court has reaffirmed that <u>Apprendi</u> concerns are not implicated by consecutive sentencing. <u>People</u> v. <u>Harris</u>, ___ Ill.2d ___, ___ Ill.Dec. ___, ___ N.E.2d ___, 2003 WL 164659, at 5 (No. 91392, Jan 24, 2003), citing <u>People</u> v. <u>Wagener</u>, 196 Ill.2d 269, 286, 256 Ill.Dec. 550, 752 N.E.2d 430 (2001); <u>People</u> v. <u>Carney</u>, 196

30

Ill.2d 518, 534-535, 256 Ill.Dec. 895, 752 N.E.2d 1137 (2001).

<u>CONCLUSION</u>

WHEREFORE, the PEOPLE OF THE STATE OF ILLINOIS respectfully request this court to affirm defendant's convictions for aggravated criminal sexual assault and aggravated battery, but to remand the cause to the circuit court with directions to vacate the conviction and sentence for robbery and to order that the 5-year sentence imposed for aggravated battery run consecutively to the sentence imposed for aggravated criminal sexual assault.

Respectfully submitted,

THE PEOPLE OF THE STATE OF ILLINOIS


Scott Rueter
State's Attorney
Macon County Courts Facility
253 East Wood
Decatur, Illinois 62523

Norbert J. Goetten
Director
Robert J. Biderman
Deputy Director
Denise M. Ambrose
Staff Attorney
State's Attorneys Appellate
        Prosecutor
725 South Second Street
Springfield, Illinois 62704
(217) 782-8076

COUNSEL FOR PLAINTIFF-APPELLEE

32

E-FILED
Friday, 04 May, 2007  12:02:46 PM
Clerk, U.S. District Court, ILCD

NO. 4-02-0435

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
DEC 0 8 2003
CLERK OF THE
APPELLATE COURT, 4TH DIST.

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Macon County |
| MARQUIS RIDLEY, | ) | No. 01CF971 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | John K. Greanias, |
| | ) | Judge Presiding. |

## ORDER

Defendant, Marquis Ridley, was convicted in a jury trial in the circuit court of Macon County of aggravated criminal sexual assault (720 ILCS 5/12-14(a)(4) (West Supp. 2001)), robbery (720 ILCS 5/18-1(a) (West 2000)), and aggravated battery (720 ILCS 5/12-4(a) (West Supp. 2001)).  He was sentenced to concurrent terms of 30 years' and 5 years' imprisonment for aggravated criminal sexual assault and aggravated battery, respectively, and to a consecutive term of 7 years' imprisonment for robbery.  The trial court ordered these sentences to run consecutively to the 4-year concurrent sentences he was serving for previous offenses.  Defendant appeals, claiming (1) he was denied effective assistance of counsel; (2) the trial court erred by imposing a sentence on his conviction for robbery because it was an included offense of aggravated criminal sexual assault; and (3) the mandatory consecutive sentencing provisions contained in section 5-8-4 of the Unified Code of Corrections (730 ILCS 5/5-8-4 (West Supp. 2001)) is unconstitutional under Apprendi v.

EXHIBIT C

New Jersey, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348
(2000). We affirm in part, reverse in part, and remand with
directions.

## I. BACKGROUND

Defendant was charged, jointly with Dustin Chenoweth
and Demarco Hill, with robbery, aggravated criminal sexual
assault in that they committed a criminal sexual assault of S.M.
during the commission of a robbery, and two counts of aggravated
battery, alleging aggravated battery was committed by intention-
ally causing great bodily harm to S.M. and by using a deadly
weapon, a tire iron, respectively.

Defendant was arrested on July 14, 2001, and gave a
statement admitting his involvement in the robbery. He initially
gave a written statement denying any knowledge of the crime and
accusing three others of falsely implicating him in the crime.
After the arresting officer told defendant he had information
defendant was actually present, defendant changed his story. He
stated he knew a robbery was to take place and he was to act as
the lookout. He observed the victim pull up in her car and exit
the vehicle. He looked down the street for traffic. When he
looked back, he saw the victim fall backwards as if she had been
struck. He looked back to the street and then back to the
victim. Someone was standing over her, but he could not tell who
it was because it was very dark. He looked back to the street.
When he looked at the victim again, he saw someone taking her
around the side of the house, and he walked to the car he and the
others had parked down the street.

He waited for the others there for a few minutes and

- 2 -

then returned on foot to see what had caused the delay.  When he returned to the house, he observed Chenoweth sitting on the front porch, and the two of them returned to the car.  Two others joined them at the car.

Defendant then made another written statement.  In the statement he said:

> "All we planned on was taking the $\underline{S}$.  It was
> dark in on the side the house watching out,
> so all I see is her fall.  I don't know who
> exactly was standing over her.  So they take
> her on side of the house, so I run to the
> car.  But didn't nobody else come with me.
> So I come back to see what's taking so long.
> Dustin is standing on the porch, and he tell
> me to just stay with him, and by that time,
> Cellus was at the car.  Like right after that
> we left.  I never touched or hurt her in any
> way.  So while this case is being tried,
> please <u>try</u> <u>to</u> <u>remember</u> <u>that</u>."  (Emphasis in
> original.)

At trial, defense counsel stated in relevant part in his opening statement:

> "Now, we expect that a police officer is
> going to testify.  [Defendant] was inter-
> viewed.  [Defendant] gave a handwritten state-
> ment.  [Defendant] acknowledged that he knew
> that a robbery was to take place, according
> to the officer and according to the handwrit-

- 3 -

ten statement.  But that's all.  He didn't

agree to participate in a rape.  He didn't

have any idea a rape was to occur."

S.M. testified on July 11, 2001, she was working as a

pizza-delivery driver and had a call to a house on South Shore

Drive in Decatur.  When she pulled in the driveway, she saw two

young men, one white and one black, who told her they did not

have correct change for the delivery.  She left and went to a

Speedway convenience store and gas station nearby and got change.

S.M. returned to the house and approached the same two men with

the pizza.  She turned to see a black male come up behind her.

As she turned forward again, one of the original two men hit her

in the eye, and she fell to the ground.  One of the men pressed

his knee against her back and asked her repeatedly where the

money was.  She stated his voice sounded like that of a black

male.

S.M. heard someone open the doors of her car and

rummage through it.  She told them there was money in the glove

compartment and her purse.  The man then released his knee,

rolled her over, and took money from her pockets.  Someone said

"You got it," and two men replied "Yes."

One man then grabbed her hair and dragged her to the

back of the house where it was "completely dark."  Her next

memory was of lying naked in the backyard.  One of the black

males had sexual intercourse with her.  After he finished, "they"

rolled her over face down and discussed something.  "They" then

started kicking her.  She could not say exactly how many men

kicked her.  Someone also struck the back of her head at least

- 4 -

three times with a hard, cold object that could have been a tire iron. S.M. then heard one of the men say, "Okay, walk, don't run." When she no longer heard voices, she arose from the ground, grabbed her clothing and ran for help.

S.M. was unable to identify any of her assailants. Nor could she describe them other than by race. On cross-examination, S.M. stated she did not see any vehicles parked on the street in front of the house where she made the delivery and none in the driveway, other than hers. She did not hear a car engine start or see any cars driving in the vicinity when she fled the backyard.

Sheila Luthy testified she was working at the Speedway convenience store on the night in question when a woman working for Domino's pizza came in shortly before midnight to ask for change for a delivery. After midnight, the same woman returned but this time was crying and very upset. She was carrying her clothes and was bloody and naked. The woman told Luthy she had been attacked and raped by the side of a house by several men. Luthy called the police.

Decatur police officer Edward Cunningham testified he responded to the call. He drove to the scene to collect evidence and found S.M.'s car still parked in the drive. He retrieved a Domino's pizza ball cap, a blue bandana, a pair of women's underwear, loose change, and a tire iron next to some blood on the grass in the backyard.

Detective Jeremy Welker testified he interviewed defendant at the police station on July 14, 2001. After Welker advised him of his <u>Miranda</u> rights (see <u>Miranda v. Arizona</u>, 384

- 5 -

U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966)), defendant
gave a written statement in which he denied any knowledge of the
crime and accused the other three defendants of falsely implicat-
ing him.   Welker told defendant he had information defendant was
actually present.   Then defendant told him he had acted as a
lookout when the robbery occurred.   Welker read aloud both of
defendant's statements to the jury.

       Defendant did not present any evidence.   The jury was
instructed on accountability and withdrawal.   Illinois Pattern
Jury Instruction, Criminal, Nos. 5.03, 5.04 (4th ed. 2000).

       In his closing argument, counsel openly admitted
defendant's guilt to robbery, telling the jury:

             "It's obvious to each and every one of you

             that I'm not going to say anything about the

             robbery count.   There is no evidence that he

             didn't make those statements.   That's it.

             It's uncontradicted; and from those, it is

             obvious that on the robbery, [defendant] both

             planned prior to and participated as a look-

             out in the robbery.

                         *  *  *

             Now there are places in this case I would

             suggest that from [defendant's] own statement

             he was legally accountable and responsible

             for what occurred; and that is what occurred

             out front for what he had agreed to do.   He

             helped plan a robbery.   He went with them.

             He participated in a robbery, and he acted as

the lookout for them.

\* \* \*

As to the robbery, as I said, that seems
self-evident.  As to the sexual assault, he
wasn't there.  He didn't plan it.  He didn't
agree to participate in it."

Counsel further suggested defendant, prior to the
commission of the aggravated criminal sexual assault, wholly
deprived his prior efforts to promote the commission of a crime
of their effectiveness by leaving the scene and going to
Chenoweth's car, which must have been parked a considerable
distance away since S.M. did not see or hear any cars in the
vicinity.

Defendant was found guilty of all charges.  On April
10, 2002, defendant's posttrial motion for a new trial was denied
and a sentencing hearing held.  The two counts of aggravated
battery were found to merge.  The trial court sentenced defendant
to consecutive terms of 30 years for aggravated criminal sexual
assault and 7 years for robbery and a concurrent term of 5 years
for aggravated battery.

Defendant's motion to reduce sentence was denied on
April 24, 2002, and a timely notice of appeal was filed on April
25, 2002.

## II. ANALYSIS

### A. Ineffective Assistance of Counsel

Defendant contends his counsel's ineffective represen-
tation deprived him of a fair trial through misunderstanding
and/or misapplying the law of accountability and withdrawal and

- 7 -

making concessions that guaranteed he would be found guilty of the charged offenses.

Under Illinois law, a person is legally accountable for the conduct of another when

"[e]ither before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense." 720 ILCS 5/5-2(c) (West 2000).

Section 5-2(c) of the Criminal Code of 1961 (Code) does not require that in order to be held accountable a person must intend the principal commit the offense for which accountability is sought. People v. Cole, 253 Ill. App. 3d 603, 609, 625 N.E.2d 816, 820 (1993). Included in section 5-2(c) of the Code is the "common-design rule," which provides "where two or more persons engage in a common criminal design or agreement, any acts in the furtherance thereof committed by one party are considered to be the acts of all parties to the common design and all are equally responsible for the consequences of such further acts." People v. Terry, 99 Ill. 2d 508, 514, 460 N.E.2d 746, 749 (1984).

The phrase "with intent to promote or facilitate such commission" means "planning or commission of an offense." (Emphasis in original.) Cole, 253 Ill. App. 3d at 609, 625 N.E.2d at 821. Therefore, the offense that a defendant may intend to promote or facilitate need not be the offense for which he is convicted by accountability. Cole, 253 Ill. App. 3d at 609, 625 N.E.2d at 821.

A defendant will not be held accountable for the conduct of another if,

> "[b]efore the commission of the offense, he terminates his effort to promote or facilitate such commission, and does one of the following: wholly deprives his prior efforts of effectiveness in such commission, or gives timely warning to the proper law enforcement authorities, or otherwise makes proper effort to prevent the commission of the offense."
>
> 720 ILCS 5/5-2(c)(3) (West 2000).

It is the communication of intent, not the naked fact of withdrawal, that determines whether a defendant is released from liability through accountability. <u>People v. Ross</u>, 329 Ill. App. 3d 872, 886, 769 N.E.2d 953, 966 (2002) (First District).

It is defendant's position on appeal that defense counsel did not render reasonably competent assistance of counsel due to misapprehension of the law and because of this serious misapprehension, his performance was so deficient as to be <u>per se</u> ineffective. See <u>United States v. Cronic</u>, 466 U.S. 648, 659, 80 L. Ed. 2d 657, 668, 104 S. Ct. 2039, 2047 (1984); <u>People Hattery</u>, 109 Ill. 2d 449, 461, 488 N.E.2d 513, 518 (1985). He relies on statements of the Supreme Court that there are some circumstances so likely to prejudice a defendant that prejudice need not be shown but will be presumed. <u>Strickland v. Washington</u>, 466 U.S. 668, 692, 80 L. Ed. 2d 674, 696, 104 S. Ct. 2052, 2067 (1984). Alternatively, he also alleges counsel was ineffective under the traditional two-pronged test of incompetence found in <u>Strickland</u>,

which requires proof (1) that his counsel's performance was deficient by having made errors so serious counsel was not functioning as the "counsel" guaranteed by the sixth amendment and (2) that counsel's deficiencies prejudiced defendant. Strickland, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064.

We find defense counsel was not per se ineffective in his representation of defendant, nor does his representation meet the standard for ineffectiveness set forth in Strickland.  To prove ineffective assistance under the Strickland standard, defendant must show counsel's errors were so serious that they deprived him of a fair trial, a trial whose result is not reliable.  Strickland, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064.  Scrutiny of a counsel's performance under Strickland must be highly deferential because of difficulties inherent in making the evaluation.  Therefore, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Strickland, 466 U.S. at 689, 80 L. Ed. 2d at 694, 104 S. Ct. at 2065.  Relief is not automatically granted even if counsel's performance is objectively unreasonable, however, because a defendant must also show he was prejudiced as a result of counsel's deficient performance.  The judgment will not be set aside if the error had no effect on it.  Strickland, 466 U.S. at 691, 80 L. Ed. 2d at 696, 104 S. Ct. at 2066.

A defendant alleging ineffective assistance under the Strickland analysis not only must show defense counsel's performance was deficient and that the performance prejudiced him but

also that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of a proceeding would have been different."  Strickland, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.  Failure to establish either a deficiency in counsel's performance or prejudice will prove fatal to the claim.  People v. Todd, 178 Ill. 2d 297, 324-25, 687 N.E.2d 998, 1010 (1997).  A court need not determine whether counsel's performance was deficient before examining any prejudice suffered if it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice.  Strickland, 466 U.S. at 697, 80 L. Ed. 2d at 699, 104 S. Ct. at 2069.

Defendant's argument his counsel's performance was per se ineffective is understandable because, like the defendant in People v. Madison, 334 Ill. App. 3d 680, 778 N.E.2d 376 (2002), he could never prove the prejudice requirement of Strickland.  In both cases, the defendant contended defense counsel misunderstood and/or misapplied the law of accountability and withdrawal.

In Madison, the defendant and codefendant, Pickens, were charged with armed robbery, two counts of attempt first degree murder, and two counts of aggravated battery with a firearm.  During the course of the robbery of a car dealership, Pickens shot two employees.  The State introduced the defendant's statement in which he had stated he agreed to take part in the robbery but he told Pickens ahead of time he did not want anyone to get hurt.  When they entered the dealership, the defendant had announced no one would get hurt and he had armed himself only with an inoperable handgun.  He stated it came as a total surprise when Pickens shot the two employees.  Madison, 334 Ill.

App. 3d at 683, 778 N.E.2d at 378-79.  Defense counsel told the
jurors the State could not prove the defendant shared guilt for
everything Pickens did because he did not plan to shoot the armed
robbery victims, he did not expect the shooting, and he had
completed his criminal objective before the shooting occurred.
Madison, 334 Ill. App. 3d at 687, 778 N.E.2d at 381.

     The court in Madison, observing the defendant would
have to use the Cronic test because he could never prove Strick-
land requirements, stated:

          "He cannot begin to argue that but for coun-
          sel's professional errors, a likelihood ex-
          isted that the outcome would have been dif-
          ferent.  With the insurmountable amount of
          evidence that the defendant provided to the
          State, it is hard to imagine how the outcome
          in this case would ever change, no matter how
          well defense counsel performed."  Madison,
          334 Ill. App. 3d at 686, 778 N.E.2d at 380.

     In this case, defendant contends defense counsel's
actions fell below an objective standard of reasonableness.
Defense counsel admitted only what defendant, himself, had
admitted in his statement to the police.  He tried to convince
the jury that defendant's criminal liability was limited to
robbery because the sexual assault was not a natural and probable
consequence of robbery.  He emphasized defendant told police the
purpose of the criminal enterprise was solely "taking the $."  As
to the factual reliability of defendant's confession, there was
no evidence in the record defendant had not given the written

- 12 -

statement freely, and counsel is not required to engage in
fabrication.  See People v. Shatner, 174 Ill. 2d 133, 148, 673
N.E.2d 258, 264 (1996).

Given the existence of defendant's confession and the
law of accountability, defense counsel in this case had little
with which to work.  Defendant cannot reasonably argue but for
counsel's professional errors, a likelihood existed that the
outcome would have been different.  Because there is no likeli-
hood the outcome of the trial would have been different, we find
no prejudice can be shown to satisfy the second prong of the
Strickland test, and we need not consider whether defense coun-
sel's actions amounted to errors that deprived defendant of a
fair trial.

Turning next to defendant's argument that defense
counsel's conduct may be presumed to be ineffective, we note the
Supreme Court in Cronic "emphasized that the sixth amendment
requires, at a bare minimum, that defense counsel act as a true
advocate for the accused.  Where 'counsel entirely fails to
subject the prosecution's case to meaningful adversarial testing,
then there has been a denial of Sixth Amendment rights that makes
the adversary process itself presumptively unreliable.'" People
v. Hattery, 109 Ill. 2d 449, 461, 488 N.E.2d 513, 518 (1985),
quoting Cronic, 466 U.S. at 659, 80 L. Ed. 2d at 668, 104 S. Ct.
at 2047.  The standard that must be met for a finding of per se
ineffectiveness, however, has recently been clarified by the
Court when it stated "[w]hen we spoke in Cronic of the possibil-
ity of presuming prejudice based on an attorney's failure to test
the prosecutor's case, we indicated that the attorney's failure

must be complete." <u>Bell v. Cone</u>, 535 U.S. 685, 696-97, 152 L.
Ed. 2d 914, 928, 122 S. Ct. 1843, 1851 (2002).

Defendant attempts to rely on <u>Hattery</u> in arguing
defense counsel's actions here amounted to no meaningful ad-
versarial testing of the State's case.  In <u>Hattery</u>, the supreme
court found the defendant's sixth amendment right to effective
assistance of counsel was violated without applying the <u>Strick-
land</u> test.  The trial counsel employed the strategy of attempting
to show the defendant was guilty of murder but undeserving of the
death penalty.  In his opening statement, defense counsel stated:

> "Ladies and gentlemen of the jury, he [defen-
> dant] did it.  He did everything [the prose-
> cution] just told you.  ***
>
> We are not asking you to find Charles
> Hattery not guilty.  At the end of your de-
> liberations, you will find him guilty of
> murder.  We are asking you to consider the
> evidence that you hear today and in the next
> few days to explain why he did the horrible
> thing that he did.  Once you have found him
> guilty, we will proceed and you will find him
> eligible for the death penalty.  The ques-
> tion, and the only question facing you, will
> be whether to impose the death penalty on
> Charles Hattery for tying to save the life of
> his family."
>
> <u>Hattery</u>, 109 Ill. 2d at 458-59, 488 N.E.2d
> at 516.

Defense counsel in <u>Hattery</u> presented no evidence at trial and did not make a closing statement to the jury. Through cross-examination of State witnesses, defense counsel attempted to develop the theory that the defendant was compelled to kill the victims. Several times during the guilt-innocence phase of trial, defense counsel conceded the defendant was truthful when he confessed to the police.

The court found defense counsel's actions constituted a denial of the sixth amendment right to counsel and reversed Hattery's conviction and sentence, even though he made no showing of prejudice under <u>Strickland</u>. After noting the United States Supreme Court stated in <u>Strickland</u> there are some circumstances so likely to prejudice a defendant that prejudice need not be shown but will be presumed (<u>Hattery</u>, 109 Ill. 2d at 461, 488 N.E.2d at 518, citing <u>Strickland</u>, 466 U.S. at 692, 80 L. Ed. 2d at 696, 104 S. Ct. at 2067), the court, relying on <u>Cronic</u>, held the actions of defense counsel in <u>Hattery</u> did not subject the prosecution's case to the meaningful adversarial testing required by the sixth amendment. The court held defense counsel's actions violated defendant's sixth amendment right "of having the issue of his guilt or innocence presented to the jury as an adversarial issue." <u>Hattery</u>, 109 Ill. 2d at 464, 488 N.E.2d at 519. The court rejected the State's argument defense counsel's actions conceding guilt were sound strategic decisions because the evidence of guilt was overwhelming, holding once the decision to stand trial is made, counsel must put the prosecution to its burden of proving a defendant guilty beyond a reasonable doubt unless the record shows the defendant knowingly and intelligently

consented to counsel's strategy.  <u>Hattery</u>, 109 Ill. 2d at 465,
488 N.E.2d at 520.

Hattery does not hold it is <u>per</u> <u>se</u> ineffective assis-
tance of counsel whenever counsel concedes a client's guilt to
offenses and the record fails to show the client's consent, if
there is overwhelming evidence of that guilt.  <u>People v. Johnson</u>,
128 Ill. 2d 253, 269, 538 N.E.2d 1118, 1124 (1989).  "[I]f
concession of guilt is made, ineffectiveness may be established;
however, the defendant faces a high burden before he can forsake
the two-part <u>Strickland</u> test."  <u>Johnson</u>, 128 Ill. 2d at 269-70,
538 N.E.2d at 1125.

Defendant argues counsel here should be found <u>per</u> <u>se</u>
ineffective because his case lacked meaningful presentation under
the adversarial conditions required by the sixth amendment.  He
contends counsel misunderstood and/or misapplied the law of
accountability and withdrawal.

Defendant contends his counsel's apparent strategy was
to admit the commission of the underlying offense of robbery and
submit that defendant did not intend to rape the victim.  He
argues counsel's strategy was based on a misunderstanding of the
law and deprived him of the right to have his case meaningfully
presented.  He contends counsel's incorrect argument that the
lack of specific intent to rape was required for accountability
undermined the entire case and assured defendant would be found
guilty of all offenses, including both aggravated criminal sexual
assault and robbery, because in order to be found guilty, defen-
dant need only intend to commit the underlying offense and need
not intend to rape.

- 16 -

The State contends defense counsel's performance here did not resemble Hattery.  Counsel agreed only to those matters to which defendant had already confessed.  He made an opening and closing statement that the offense of robbery was completed before the aggravated battery and sexual assault occurred.  He cross-examined the victim to underscore the fact she could not identify defendant as one of the people who participated in the battery and sexual assault, and she did not see or hear any vehicles in the vicinity of the crime.  This meant that when defendant went to Chenoweth's car, he put great distance between himself and the crime scene; thus, attempting to render no aid to the others by acting as a lookout once the crime of robbery had been completed.

We find defense counsel's conduct in this case to be more like that of the attorneys in People v. Williams, 192 Ill. 2d 548, 736 N.E.2d 1001 (2000), People v. Shatner, 174 Ill. 2d 133, 673 N.E.2d 258 (1996), and People v. Madison, 334 Ill. App. 3d 680, 778 N.E.2d 376 (2002), than the attorney in Hattery.  The court in Williams found no per se ineffectiveness because, as in Shatner, defense counsel only conceded what defendant had admitted to the police, but submitted the ultimate question of guilt to the jury, unlike in Hattery, where counsel had completely and unequivocally conceded the defendant's guilt.  Thus, there was no breakdown of the adversarial process.  Williams, 192 Ill. 2d at 566, 736 N.E.2d at 1012.  In Williams, counsel aggressively cross-examined the State's witnesses, argued for a not-guilty verdict on murder and armed robbery, and moved to suppress the defendant's statement during pretrial proceedings.  Williams, 192

Ill. 2d at 567, 736 N.E.2d at 1012.

Likewise, in <u>Shatner</u>, the court found the tactics of the defendant's attorney and that of counsel in <u>Hattery</u> to be dissimilar because Shatner's counsel "presented both opening and closing arguments; cross-examined virtually all of the State's witnesses; presented several witnesses, including the defendant, on the defendant's behalf; objected often and strenuously to the admission of adverse evidence; and moved for a mistrial on several occasions." <u>Shatner</u>, 174 Ill. 2d at 145-46, 673 N.E.2d at 263.

In <u>Madison</u>, the court found defense counsel did every-thing legally possible to prevent his client's conviction despite the hopeless circumstances. He filed endless pretrial motions: to substitute the judge; to disqualify the prosecutor assigned to the case; for appointment of an expert witness; and for discovery sanctions. He also filed eight motions aimed at suppressing excluding evidence and, during trial, cross-examined witnesses aggressively. <u>Madison</u>, 334 Ill. App. 3d at 688, 778 N.E.2d at 382. In the end, it was to no avail. Applying the <u>Cronic</u> standard of review, the court noted an obvious concern when claims of no meaningful adversarial testing are alleged.

> "Some cases do not afford much with which the defendant's lawyer can work, regardless of his or her skill and training. Nonetheless, as long as a defendant chooses to persist in a not-guilty plea, even in the face of insur-mountable evidence, counsel is obligated to pursue a defense consistent with his client's

- 18 -

innocence. [Citation.]  Defending clients who
have left a trail of evidence that makes
guilt obvious can be a daunting task.  Often
the relationship between counsel and client
becomes strained when the client shuns sound
advice to enter a guilty plea and show some
contrition in an effort to mitigate punish-
ment.  Any strategy engaged in under that
circumstance deserves to be weighed in light
of what the defense attorney confronted.
When we decide whether counsel provided a
meaningful adversarial test of the State's
case, we must necessarily judge efforts to
defend the indefensible with a tolerance for
the word 'meaningful.'  The more undeniable
the defendant's guilt, the more tolerant we
need to become."  Madison, 334 Ill. App. 3d
at 686-87, 778 N.E.2d at 381.

Further, defendant, as the defendant in Madison, is
"simply wrong when he maintains that his lawyer's stance was at
odds with the law of accountability in this state.  *** [T]his
attorney knew how the law of accountability functioned, and he
fashioned his defense to comport with it."  Madison, 334 Ill.
App. 3d at 688, 778 N.E.2d at 382-83.  Defense counsel demon-
strated awareness of the fact defendant's defense depended upon
convincing the jury that the agreed-upon robbery was completed
before the sexual assault started.  Counsel tried to convince the
jury not only was defendant not a participant in the sexual

- 19 -

assault, but that his responsibility for it ended with the completion of his sole criminal objective. See <u>Madison</u>, 334 Ill. App. 3d at 689, 778 N.E.2d at 383.

Like the defense in <u>Madison</u>, the defense here was factually imperfect. The common design was still ongoing when the sexual assault occurred. Defendant left, but returned to the scene and then left with the other codefendants. However, as the court noted in <u>Madison</u>,

"Defense counsel offered the jury a construction of the facts that would allow it to return favorable verdicts. Jurors who believed the defendant's claims that he did not buy into murder, and who were hesitant to assign guilt for serious crimes in which he did not actually engage, were given a way to reach a verdict of not guilty. The fact that they correctly rejected [the defense theory] only confirms how hard a case this was to defend. It does not mean that counsel failed to subject the State's case to an adversarial test that was meaningful." <u>Madison</u>, 334 Ill. App. 3d at 689, 778 N.E.2d at 383.

As did the courts in <u>Shatner</u>, <u>Williams</u>, and <u>Madison</u>, we find no <u>per se</u> ineffective assistance of counsel and that defendant was not deprived of his constitutional right to effective assistance of counsel.

B. Robbery as Included Offense of Aggravated Criminal
Sexual Assault

The trial court sentenced defendant to 30 years for aggravated criminal sexual assault and 5 years for aggravated battery to be served concurrently.  He also sentenced defendant to 7 years for robbery to be served consecutively to the other two sentences.

Defendant argues robbery is an included offense of aggravated criminal sexual assault, as charged in the information, and, therefore, both the conviction and sentence must be vacated.

The State concedes robbery was an included offense as defendant was charged with one count of aggravated criminal sexual assault (720 ILCS 5/12-14(a)(4) (West Supp. 2001)) in that he, during the commission of a robbery, knowingly committed criminal sexual assault by, through the use of force, placing his penis in the victim's vagina.  Count II charged defendant with robbery.  (720 ILCS 5/18-1 (West 2000)).  Section 2-9(a) of the Code defines "included offense" as an offense that "[i]s established by proof of the same or less than all of the facts or a less culpable mental state (or both), than that which is required to establish the commission of the offense charged."  720 ILCS 5/2-9(a) (West 2000).  An offense is considered a lesser-included offense if it is described by the charging instrument.  People v. Baldwin, 199 Ill. 2d 1, 7-8, 764 N.E.2d 1126, 1129 (2002).

Both parties agree the trial court erred in sentencing defendant to a consecutive sentence of 7 years for robbery when it was a lesser included offense of aggravated criminal sexual

- 21 -

assault.  Therefore, the conviction and sentence for robbery should be vacated.  See People v. Conerty, 296 Ill. App. 3d 459, 464-65, 695 N.E.2d 898, 901-02 (1998).

In raising this sentencing issue on appeal, however, defendant has opened the door for the State's argument the concurrent sentence given for aggravated battery should actually be consecutive to the remaining sentence for aggravated criminal sexual assault.  As the charging instrument for aggravated criminal sexual assault did not include allegations of the intentional or knowing infliction of great bodily harm, the charge of aggravated battery is not an included offense.  See People v. Russell, 234 Ill. App. 3d 684, 688-89, 600 N.E.2d 1202, 1205 (1992) (Second District).  Thus, the aggravated battery conviction remains, and it was error for the trial court to make the sentence for that offense concurrent with that for aggravated criminal sexual assault.

Consecutive sentencing was mandatory in this case under either section 5-8-4(a)(ii) or 5-8-4(b) of the Unified Code of Corrections (Unified Code) (730 ILCS 5/5-8-4(a)(ii), (b) (West Supp. 2001)).  People v. Harris, 203 Ill. 2d 111, 116-17, 784 N.E.2d 792, 796 (2003).  As in Harris, defendant's offenses are among the triggering offenses listed in both subsections (a) and (b) of section 5-8-4.

Section 5-8-4(a) of the Unified Code provides two distinct exceptions to the general prohibition against consecu-tive sentences for offenses arising out of a single course of conduct.  It establishes that consecutive sentences are mandatory when the offenses were committed as part of a single course of

conduct during which there was no substantial change in the nature of the criminal objective and either (1) one of the offenses was a Class X or Class 1 felony, and the defendant inflicted severe bodily injury; or (2) one of the offenses was a violation of section 12-13, 12-14, or 12-14.1 of the Code (see 720 ILCS 5/12-13, 12-14, 12-14.1 (West 2000)). Once the initial determination of course of conduct is completed, the trial court's exercise of discretion is completed, and consecutive sentencing is mandatory if the offenses are among the listed triggering offenses. Harris, 203 Ill. 2d at 114-15, 784 N.E.2d at 795.

Section 5-8-4(b) of the Unified Code establishes specific requirements with respect to mandatory consecutive sentencing, and a trial court is required to enforce those requirements. The trial court is not required to find the offenses were part of a single course of conduct for section 5-8-4(b) to apply. Subsection (b) provides consecutive sentences must be imposed when the offenses arose from separate courses of conduct and either (1) one of the offenses was a Class X or Class 1 felony and the defendant inflicted severe bodily injury, or (2) one of the offenses was a violation of section 12-13, 12-14, or 12-14.1 of the Code. Harris, 203 Ill. 2d at 115-16, 784 N.E.2d at 795.

In this case, defendant's conviction for aggravated criminal sexual assault violates section 12-14 of the Code. Therefore, mandatory consecutive sentencing applies, and the case will be remanded for imposition of consecutive sentences for the remaining offenses of aggravated criminal sexual assault and

aggravated battery.

### C. Constitutionality of Mandatory Consecutive Sentence Provisions of Section 5-8-4 of the Unified Code Under _Apprendi_

Our supreme court has recently reaffirmed that the constitutional concerns raised in _Apprendi v. New Jersey_, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000), are not implicated by consecutive sentencing. _Harris_, 203 Ill. 2d at 120, 784 N.E.2d at 798, citing _People v. Wagener_, 196 Ill. 2d 269, 286, 752 N.E.2d 430, 441 (2001). Therefore, there is no constitutional violation on that ground in this case.

### III. CONCLUSION

For the foregoing reasons, we find defendant was not denied effective assistance of counsel nor are the mandatory consecutive sentencing provisions contained in section 5-8-4 of the Unified Code (730 ILCS 5/5-8-4 (West Supp. 2001)) unconstitutional. We find defendant's conviction and sentence for robbery should be vacated and the cause remanded for imposition of consecutive sentences for the remaining offenses.

Affirmed in part and reversed in part; cause remanded with directions.

KNECHT, P.J., with McCULLOUGH and MYERSCOUGH, JJ., concurring.



E-FILED
Friday, 04 May, 2007 12:01:06 PM
Clerk, U.S. District Court, ILCD

Clerk of the
Appellate Court, 4th Dist.

## No. 4-04-0242

## IN THE APPELLATE COURT OF ILLINOIS

## FOURTH JUDICIAL DISTRICT

| | | |
|---|---|---|
| **PEOPLE OF THE STATE OF ILLINOIS,** | ) | Appeal from the Circuit Court |
| Plaintiff-Appellee, | ) | of the Sixth Judicial Circuit, |
| | ) | Macon County, Illinois. |
| -vs- | ) | No. 01-CF-971 |
| | ) | |
| **MARQUIS RIDLEY,** | ) | Honorable |
| Defendant-Appellant. | ) | John K. Greanias, |
| | ) | Judge Presiding. |

### CORRECTED MOTION TO WITHDRAW
### AS COUNSEL ON APPEAL

Now comes the Office of the State Appellate Defender, Fifth Judicial District, by Larry R. Wells, Assistant Defender, the defendant's court-appointed counsel, and moves that This Court grant the Office of the State Appellate Defender leave to withdraw as counsel.

In support thereof the following is stated:

1. The defendant, Marquis Ridley, appeals the dismissal of his post-conviction petition.

2. A jury found the defendant guilty of robbery, aggravated battery and aggravated criminal sexual assault. (R.C57-60) This Court remanded the case on direct appeal because the robbery was charged as the lesser included offense of the aggravated criminal sexual assault. *People v. Ridley*, 4-02-0435 (December 8, 2003), order at 21-24.

3. Defendant filed a pro se post-conviction petition, which was dismissed as

EXHIBIT D

frivolous. (R.C PC29,40-41)

4. Counsel has thoroughly reviewed the record and has concluded that there is no way that the defendant can prevail on this appeal.

5. One point raised by the defendant is the claim that since This Court ordered the robbery conviction vacated and robbery is the aggravating factor for the sexual assault, the sexual assault conviction should be vacated as well. (R.C PC29,38) This argument fails to state the gist of a claim because This Court only vacated the robbery conviction because it was part and parcel of the aggravated criminal sexual assault.

The jury was told that it had to find proof beyond a reasonable doubt that the sexual assault occurred during the robbery before the sexual assault could be aggravated. (R.C48) The error was in convicting and sentencing defendant on the robbery as a separate offense, and This Court corrected that error. There is no issue about the sexual assault being invalid merely because the robbery was used to aggravate it. That was a jury decision.

Another issue raised by the defendant is that mandatory consecutive sentences violate the rule in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed. 2d 435 (2000). (R.C PC29) The Illinois Supreme Court says that they do not. *People v. Wagener*, 196 Ill. 2d 269, 286, 752 N.E.2d 430, 441, 256 Ill. Dec. 550 (2001). The maximum total sentence for no crime is changed, merely because the sentences are served in sequence. Consequently, this issue also does not raise the gist of a claim for relief.

The defendant's claim that the evidence is insufficient to support conviction for sexual assault and aggravated battery also does not state the gist of a claim, because it is contradicted by the record. This Court noted that the defendant confessed to being a lookout for the robbery, and merely claimed that he did not agree to the

commission of the sexual assault, or intend that it take place. *Ridley*, 4-02-0435, order at 5, 14-15. The jury here was instructed on the "common design" rule, that requires the separate criminal act to be "in furtherance of the planned and intended act" before a guilty verdict can be signed. (R.C44) So the jury here found that the robbery was a part of the sexual assault, and was closely connected to it under the facts so as to make defendant responsible.

Defendant's post-conviction petition further alleges that he was denied his constitutional right to a fair trial by the trial court overruling the defense objection to a remark made in the prosecutor's closing argument. (R.C PC29) The prosecutor in closing argument stated that, in effect, the victim was robbed because she had taken a job which provided a chance for her to be robbed, but that her job delivering pizzas late at night was not a license to make her a victim. (R. February 26, 2002, 12) The remark was made in a sarcastic way, referring to being beaten and raped as a "reward", and defense counsel objected on the grounds that the prosecutor was seeking a verdict by urging sympathy. *Id.* The judge overruled the objection, but warned the jury that it was "not to decide the case based on sympathy". *Id.* The prosecutor's argument was not one that urged a verdict based upon sympathy, but was instead a sarcastic remark. Although the manner of expression was gratuitous, the prosecutor's point was to highlight the evil of the offenses. *See, e.g., People v. Johnson*, 73 Ill. App. 3d 431, 435, 392 N.E.2d 587, 591, 29 Ill. Dec. 890 (1st Dist. 1979) ("the state's attorney...is permitted...to comment upon [the effect of crime] upon the community"). Prosecutors are allowed to argue that crime is an awful thing and that victimizing people is very bad. The victim here was whacked on the head several times as part of the robbery itself, and for no other reason than she delivered pizzas at midnight and so had some cash. The post-conviction petition does not raise the gist

of a claim by alleging that objection to the prosecutor's closing argument should have been sustained.

Defendant's other arguments, that the combination of the claims shows ineffective assistance of counsel and due process violations (R.C PC29), fails to state the gist of a claim because it depends on the merits of the other separate claims, and they have no merit, separately or combined.

6. Counsel has already advised the defendant of his right to respond to the motion for leave to withdraw, and defendant is receiving a copy of the instant motion as well.

7. By a cover letter with the motion, counsel is further advising the defendant that if, in preparing defendant's response to this motion, defendant needs a copy of the common-law record, defendant may request such from This Court at the address provided in the letter.

8. In *Pennsylvania v. Finley*, 481 U.S. 551, 107 S.Ct. 1990, 95 L.Ed. 2d 539 (1987), the United States Supreme Court held that in collateral post-conviction proceedings, the United States Constitution did not require the full protection of the procedures set out in *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed. 2d 493 (1967). Illinois courts have adopted this proposition. *See People v. Lee*, 251 Ill. App. 3d 63, 621 N.E.2d 287, 190 Ill. Dec. 418 (2d Dist. 1993). *See also People v. Rial*, 214 Ill. App. 3d 420, 573 N.E.2d 842, 845, 158 Ill. Dec. 29 (3d Dist. 1991); *People v. Norton*, 203 Ill. App. 3d 571, 561 N.E.2d 348, 350, 149 Ill. Dec. 70 (4th Dist. 1990); *People v. Robinson*, 160 Ill. App. 3d 366, 513 N.E.2d 603, 604, 112 Ill. Dec. 189 (3d Dist. 1987). In light of these cases, counsel is filing the instant motion in lieu of a motion under *Anders v. California*.

WHEREFORE, counsel prays that This Court grant the defendant a reasonable opportunity to show cause why the instant appeal should not be dismissed or the

judgment affirmed for lack of substantial merit, and why the Office of the State

Appellate Defender should not be allowed to withdraw as counsel on appeal. Should

the defendant fail to make such showing of cause, counsel requests that this motion

for leave to withdraw be granted.

Respectfully submitted,

DANIEL M. KIRWAN
Deputy Defender

LARRY R. WELLS
Assistant Defender

Office of the State Appellate Defender
Fifth Judicial District
730 E. Illinois Highway 15, Suite #1
Mt. Vernon, IL 62864
618-244-3466

COUNSEL FOR DEFENDANT-APPELLANT

# No. 4-04-0242

## IN THE APPELLATE COURT OF ILLINOIS

## FOURTH JUDICIAL DISTRICT

| | | |
|---|---|---|
| **PEOPLE OF THE STATE OF ILLINOIS,**<br>    Plaintiff-Appellee, | ) ) ) ) | Appeal from the Circuit Court of the Sixth Judicial Circuit, Macon County, Illinois. |
| -vs- | ) ) | No. 01-CF-971 |
| **MARQUIS RIDLEY,**<br>    Defendant-Appellant. | ) ) ) ) ) ) | Honorable John K. Greanias, Judge Presiding. |

## PROOF OF SERVICE

Mr. Robert Biderman
Office of the State's Attorneys
Appellate Prosecutor
725 South Second Street
Springfield, Illinois  62704

Mr. Marquis Ridley
Register No. K88450
Menard Correctional Center
P.O. Box 711
Menard, IL  62259

Mr. Scott Reutter
Macon County State's Attorney
253 E. Wood Street
Decatur, Illinois 62523

    The undersigned, being first duly sworn on oath, deposes and says that she has served the required number of copies of the attached *Finley* Motion in the above-entitled cause on the above named persons on the 4th day of January, 2005, by:x__ United States Mail ___ Personal Service ___ United Parcel Service.

*Sheila Taska*
Office of the State Appellate Defender
Fifth Judicial District
730 E. Illinois Highway 15, Suite #1
Mt. Vernon, IL 62864
618-244-3466

COUNSEL FOR DEFENDANT-APPELLANT

SUBSCRIBED AND SWORN TO
Before me on the 4th day of January, 2005.

_____
NOTARY PUBLIC

Official Seal
Allyson McPhail
Notary Public State of Illinois
My Commission Expires 02/14/08

01- CF - 971

To Appellate Court                    2/3/05

From: Marcus Pedley K 88450

FILED
FEB 7 - 2005
Clerk of the
Appellate Court, 4th Dist.

_ADDITIONAL POINTS & AUTHORITIES_
4-04-0242

I'm writing on behalf of the
motion by mr larry R. Wells to
withdraw as my counsel on my
appeal.
First off I want to thank the court
for giving me the opportunity to respond
to the claims made by mr Wells
such as "I cant win my appeal" said
without him even trying.

1) First he claims that since this court
vacated the robbery only because it was
parcel to the agg. criminal assault + that
the robbery was only used to aggravate
the criminal sexual assault on the decision
of the jury I should now get less!
Which is an obviously bogus claim
because even I know that after any of
an agg. element used to up grade any
charge + once that aggravating element
is no longer a part of that crime it can
no future be used against a person
no matter the reason it was vacated or
reversed + since my robbery which was
the aggravated factor was subsequently
vacated it should not + cannot be
used to give me more time than

EXHIBIT E

ewold have got without it & should be remanded back to cart & my acc, criminal sexual assault 1 from down to criminal sexual assault + one re-sentenced or it over-tried completely!

People v Alejos 97 Ill 2d 502 455 N.E. 2d 48 (1983) (a charge was vacated & he was sentenced to maximum time on the still standing charge based on his conviction of the reversed charge. Supreme Court found that since the vacated charge was the primary reason for maximum sentence that charge should be reversed + remanded.

People v Lopez 147 Ill App 3d 127 499 N.E. 2d 859 (3d Dist 1986) also see People v McDermott 141 Ill App 3d 996 498 N.E. 2d 1293 (1st Dist 1986) Sentence for reckless homicide reversed + remanded for resentencing where DUI conviction was reversed. see also People v Crossin, 42 Ill app 3d 76, 356, N.E. 2d 621 (5th Dist 1976) Sentence for contributing to sexual delinquency of a child reversed + remanded for resentencing, where battery conviction was reversed.

People v Mortis, 137 Ill app 3d 171 484 N.E. 2d 888 (1st Dist 1985) see also People v Williams, 145 Ill App 3d 482 495 N.E. 2d 1201 (1st Dist 1986) Sentence for rape was reversed + remanded for resentencing where armed robbery conviction was reversed. People v Boyer, 138 Ill app 3d 16, 485 N.E. 2d 460 (3d Dist 1985) Conviction for agg Criminal Sexual Assault was reduced to criminal sexual assault because aggravating factor cold not be proved.

As well as by the courts using one single factor as both an element of my crime + as the aggravating factor to justify my sentence on the reversed charge is double enhancement + violates the IL Constitution!

→

And justifying the imposition of a harsher sentence than might otherwise have been imposed.

2) He also claims that my claim for ineffective assistance of counsel has no merit.
When the record clearly shows that my trial lawyer did not represent me to the standards of the law + sealed my fate of conviction on all charges, by first not objecting to the use of my statements which clearly contradicted eachother + assisted my conviction pretty much. As well as the objection to the prosecutors closing argument should've been sto sustained + they gave the reason (of being intended to persuade the jurys conviction of guilt by getting them (inflamed) as of credit for justice from the tests, the statements they made were completly uncalled for + intended for nothing but to point me out to be a possible threat if all of the defendants had the least to do with any of it. Also my attorney in his closing argument made it clear that I was guilty + completly showed he didnt know how to attack the situation, regardless of my statement it's his gob to make the jurys see otherwise + in doing so shows his own ineffectiveness + violation of due process.

People vs Hatley, 109 Ill 2d 449 488 N.E. 2d 513 (1985)
People v. Woods 151 Ill App 3d 687 500 N.E. 2d 1103 (5th Dist 1986)
People v Calhoun 144 Ill app 3d 829 494 N.E. 2d 498 (1st dist 1986)
People v Chandler 129 Ill 2d 233 543 N.E. 2d 1290 (1980)

People v Redmond, 50 Ill 2d 313 278 N.E. 2d 766 (1972)
People v Dawney 198 Ill app 3d 704 556 N.E. 2d 300 (2d Dist 1990)

I Marcus Ridley pray that ya the courts see the gist + merit in these claims or issues that I have raised + in doing so will see that I have the right to see or have my case heard in the appellate courts + God willing have some relief!
Thankyu for taking the time to hear my case + considering my appeal + if ya do choose to let my case be heard I would like to be appointed new counsel because my opinion is that Mr Wells does not take + will not take my case seriously!

        Thank ya            Marcus Ridley
                                K-88450

I didn't really understand how I was supposed to write this up since I wasn't getting proper use of the law library, but still I hope it gives ya the full understanding!

(please respond A.S.A.P.)

NO.  4-04-0242

IN THE

APPELLATE COURT OF ILLINOIS

FOURTH JUDICIAL DISTRICT

| | |
|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | )  Appeal from the Circuit Court of |
| Plaintiff-Appellee, | )  the Sixth Judicial Circuit |
| | )  Macon County, Illinois |
| vs. | ) |
| | )  No.  01-CF-971 |
| MARQUIS RIDLEY, | ) |
| | )  Honorable |
| Defendant-Appellant. | )  John K. Greanias |
| | )  Judge Presiding. |

BRIEF AND ARGUMENT FOR PLAINTIFF-APPELLEE

FILE COPY

Jack Ahola
State's Attorney
Macon County Courts Facility
253 East Wood
Decatur, Illinois  62523

Norbert J. Goetten
Director
Robert J. Biderman
Deputy Director
Denise M. Ambrose
Staff Attorney
State's Attorneys Appellate
        Prosecutor
725 South Second Street
Springfield, Illinois  62704
(217) 782 - 8076

COUNSEL FOR PLAINTIFF-APPELLEE

EXHIBIT F

POINT AND AUTHORITIES                    PAGE

THIS COURT SHOULD ALLOW APPELLATE COUNSEL'S MOTION
TO WITHDRAW AS COUNSEL AND AFFIRM THE ORDER OF THE
CIRCUIT COURT OF MACON COUNTY WHICH SUMMARILY
DISMISSED DEFENDANT'S PRO SE POST-CONVICTION
PETITION . . . . . . . . . . . . . . . . . . . . . 3

Pennsylvania v. Finley, 481 U.S. 551, 107 S.Ct.
        1990 (1987) . . . . . . . . . . . . . . . 3

People v. Johnson, 223 Ill.App.3d 169, 584 N.E.2d
        515 (3rd Dist. 1991), appeal denied, 144 Ill.2d
        639, 591 N.E.2d 27 (1992) . . . . . . . . . 4, 5

People v. Jones, 213 Ill.2d 498, 821 N.E.2d 1093
        (2004) . . . . . . . . . . . . . . . . . . 6

People v. Kimble, 348 Ill.App.3d 1031, 811 N.E.2d
        346, 349 (4th Dist. 2004), appeal denied, ___
        N.E.2d (Ill. Oct. 6, 2004)(Table No. 98785) . . . . 6

People v. Palmer, 352 Ill.App.3d 877, 817 N.E.2d 129
        (4th Dist. 2004), appeal pending (Jan. Term
        2005) . . . . . . . . . . . . . . . . . . . 6

People v. Campbell, 345 Ill.App.3d 810, 803 N.E.2d
        1047 (4th Dist. 2004) . . . . . . . . . . . 7

People v. Simms, 192 Ill.2d 348, 736 N.E.2d 1092
        (2000) . . . . . . . . . . . . . . . . . . 8

People v. Smith, 345 Ill.App.3d 742, 803 N.E.2d 570
        (2nd Dist. 2004) . . . . . . . . . . . . . 8

i

People v. Cleveland, 342 Ill.App.3d 912, 796 N.E.2d

    201 (2nd Dist. 2003), appeal pending (Jan Term

    2004) . . . . . . . . . . . . . . . . . . . . . . 8

People v. Little, 335 Ill.App.3d 1046, 782 N.E.2d

    957 (4th Dist. 2003) . . . . . . . . . . . . . . . 8

People v. Jefferson, 257 Ill.App.3d 258, 628 N.E.2d

    925 (1st Dist. 1993), appeal denied, 155 Ill.2d

    569, 633 N.E.2d 10 (1994) . . . . . . . . . . . . 8

People v. Edwards, ___ Ill.App.3d ___, ___ N.E.2d ___,

    2005 WL 525703 (3rd Dist. 2005) . . . . . . . . . 8

720 ILCS 5/12-14(a)(4)(West 2001) . . . . . . . . . . . 3, 4

NATURE OF THE CASE

Following a jury trial in the circuit court of Macon County in February of 2002, the defendant, Marquis Ridley, was found guilty of aggravated criminal sexual assault, robbery, and aggravated battery. On April 10, 2002, the court sentenced defendant to concurrent terms of 30 years' and 5 years' imprisonment for aggravated criminal sexual assault, and aggravated battery, respectively, and to a consecutive term of 7 years' imprisonment for robbery. The court ordered these sentences to run consecutively to the 4-year concurrent sentences defendant was serving for aggravated battery and attempt aggravated robbery. Defendant filed a direct appeal. In a Rule 23 Order filed on December 8, 2003, this court affirmed defendant's convictions for aggravated criminal sexual assault and aggravated battery, but remanded the cause with directions to vacate his conviction and sentence for robbery and to impose consecutive sentences for aggravated criminal sexual assault and aggravated battery. People v. Marquis Ridley, General No. 4-02-0435, Rule 23 Order filed December 8, 2003.

On February 23, 2004, defendant filed a pro se post-conviction petition that the trial court summarily dismissed on March 1, 2004. Defendant filed notice of appeal on March 15, 2004. On January 4, 2005, defendant's appellate counsel filed a motion to withdraw pursuant to Pennsylvania v. Finley,

1

481 U.S. 551, 107 S.Ct. 1990 (1987). On February 7, 2005, defendant filed a response to the motion.

ARGUMENT

THIS COURT SHOULD ALLOW APPELLATE COUNSEL'S MOTION TO WITHDRAW
AS COUNSEL AND AFFIRM THE ORDER OF THE CIRCUIT COURT OF MACON
COUNTY WHICH SUMMARILY DISMISSED DEFENDANT'S <u>PRO</u> <u>SE</u> POST-
CONVICTION PETITION.

In response to appellate counsel's motion to withdraw,
pursuant to <u>Pennsylvania</u> v. <u>Finley</u>, 481 U.S. 551, 107 S.Ct.
1990 (1987), defendant maintains that: (1) his conviction for
aggravated criminal sexual assault must be vacated outright or
reduced to criminal sexual assault because the element used to
enhance criminal sexual assault to aggravated criminal sexual
assault---that the criminal sexual assault was committed
during the commission of robbery (720 ILCS 5/12-14(a)(4)(West
2001))---no longer exists, as this court directed the trial
court to vacate the robbery conviction and sentence as a
lesser-included offense of aggravated criminal sexual assault
(Supp. R. Vol. I, C3; Unmarked Volume, C23-C26); (2) the trial
court erred by considering robbery, which was an element of
the crime of aggravated criminal sexual assault, as an
aggravating factor in sentencing; (3) his trial counsel
"sealed [his] fate on conviction on all charges" by not
objecting to the use of defendant's statements to the police;
and (4) the trial court should have sustained defendant's
objection to the prosecutor's closing argument which inflamed
the jury and portrayed defendant as a "monster."

3

The People address these points *seriatim*. On direct appeal, the State conceded, and this court agreed, that robbery was an included offense of aggravated criminal sexual assault as charged in the information, and that the conviction and 7-year sentence the court imposed for robbery had to be vacated. (Unmarked Volume, C23-C24) Defendant's post-conviction petition alleges that his aggravated criminal sexual assault cannot stand because the conviction that enhanced the criminal sexual assault---committing criminal sexual assault during the course of the commission of the robbery (720 ILCS 5/12-14(a)(4)(West 2001))---was vacated.

An analogous argument was made in <u>People</u> v. <u>Johnson</u>, 223 Ill.App.3d 169, 584 N.E.2d 515 (3rd Dist. 1991), <u>appeal denied</u>, 144 Ill.2d 639, 591 N.E.2d 27 (1992), where defendant was convicted of felony murder, burglary, and residential burglary. The trial court imposed no sentence for burglary, as it was a lesser-included offense of residential burglary. Defendant argued that once the burglary conviction was vacated, the felony murder became predicated upon residential burglary, which was not one of the enumerated forcible felonies that could serve as a predicate to felony murder. The court held that vacating the burglary conviction, whether because it formed the predicate felony for the greater offense of felony murder, or because it was a lesser-included offense of residential burglary, did not require vacating the defendant's felony murder conviction:

4

In the instant case, sufficient proof was presented to sustain the guilty verdict of felony murder based on burglary and residential burglary. In this situation, vacating the conviction for the underlying felony of burglary would not negate a finding that the defendant performed the acts causing the victim's death while the defendant was committing the burglary. It means only that because it would be impossible to commit the greater offense of felony murder without necessarily committing the lesser offense of burglary, judgment and sentence should only be imposed on the greater offense of felony murder.

Simply because an underlying felony conviction is vacated does not mean, and has never meant, that the felony murder conviction cannot stand. Nor do we accept the defendant's apparent assertion that whenever a defendant is also convicted of another offense, of which the predicate felony is also a lesser included offense, this somehow negates, or operates as an acquittal of, the predicate felony. A felony murder conviction remains intact and proper even after any conviction for the predicate felony is vacated. This is true whether the vacatur is grounded on the fact that the predicate felony is an included offense of felony murder or the fact that it is an included offense of another felony of which the defendant was also convicted.

Johnson, 223 Ill.App.3d at 170-171, 584 N.E.2d at 517.

In this case, as in Johnson, vacating defendant's conviction and sentence for robbery, as a lesser-included offense of aggravated criminal sexual assault, does not negate the overwhelming evidence that defendant participated with Dustin Chenoweth and Demarco Hill in robbing S.M., and that the criminal sexual assault occurred during the commission of the robbery. The aggravated criminal sexual assault conviction remains intact because vacating the robbery conviction as a lesser-included offense does not act as an acquittal.

5

Defendant's post-conviction petition did not contain any allegation that the robbery offense served both to enhance the aggravated criminal sexual assault and as a aggravating factor in sentencing. (Unmarked Volume, C28-C30) This court is not free, as the supreme court is under its supervisory authority, to excuse, in the context of post-conviction proceedings, an appellate waiver caused by the failure of a defendant to include issues in his post-conviction petition. <u>People</u> v. <u>Jones</u>, 213 Ill.2d 498, 508, 821 N.E.2d 1093, 1099 (2004).

Defendant's third claim, that he was denied the effective assistance of counsel because counsel "sealed [his] fate on conviction on all charges" by not objecting to the use of his statements to the police is barred by the doctrine of *res judicata* because that claim was raised and decided on direct appeal. A first-stage dismissal can be based on *res judicata* where the facts are undisputed as to an issue that has in fact been raised and adjudicated. <u>People</u> v. <u>Kimble</u>, 348 Ill.App.3d 1031, 1034, 811 N.E.2d 346, 349 (4th Dist. 2004), <u>appeal denied</u>, ___ N.E.2d ___ (Ill. Oct. 6, 2004)(Table No. 98785); <u>People</u> v. <u>Palmer</u>, 352 Ill.App.3d 877, 884, 817 N.E.2d 129, 136 (4th Dist. 2004), <u>appeal pending</u> (Jan. Term 2005).

Finally, defendant alleges that the trial court should have sustained his objection to the prosecutor's closing statement that depicted him as a "monster":

> Jerry Finney, assistant state's attorney: ** I want to talk to you about what happened to S.M. on July the 11th of 2001. S.M. was on that date and before that date doing her best to work a job, be an

6

honest person and work a job.

It's a job that some people would look down there [sic] nose at.  Some people would look down their nose and say, well, I won't take a job like that. I won't deliver pizza.  I won't drive my own car and work for $5.25, maybe get a tip, maybe not, work at night, maybe go deliver a pizza and maybe get ripped off and maybe not.  But, S.M. was willing to work that kind of job until July the 11th of 2001.

I'd like you to think about the reward that she got for being an honest individual and working an honest job.

Greg Mattingley: Objection, Your Honor.  I believe this argument is an attempt to invoke sympathy.

The Court: Well the objection is overruled.  But, ladies and gentlemen, part of the instructions I will give you are that you're not to decide this case based on sympathy.  You're the judges of the facts.  It is your duty to determine what the facts are and to render a fair verdict based upon the evidence and the law as given to you by the Court. You may proceed, counsel.

Mr. Finney: Thank you.  The reward S.M. got for trying to be an honest individual and work an honest job was that.  You'll get a chance to see this photograph more closely.  That's what she got. She got 12 staples in the back of her head.  She got beaten and kicked while she was down on the ground and she got raped.  That man there is partly responsible.

(Supp. R. Vol. III, Feb. 26, 2002, 11-13)

The post-conviction court found that this claim was barred by the waiver doctrine, as it was not raised on direct appeal. (Unmarked Volume, C40) A first-stage petition may not be dismissed on the procedural bar of waiver (People v. Campbell, 345 Ill.App.3d 810, 813-814, 803 N.E.2d 1047, 1051 (4th Dist. 2004)), but this court's review is essentially the same as that required of the trial court, that is, *de novo*

7

review (People v. Simms, 192 Ill.2d 348, 360, 736 N.E.2d 1092
(2000)).   This court may therefore independently determine
that the petition was frivolous and patently without merit.
People v. Smith, 345 Ill.App.3d 742, 747, 803 N.E.2d 570, 574
(2nd Dist. 2004); People v. Cleveland, 342 Ill.App.3d 912,
915, 796 N.E.2d 201, 203 (2nd Dist. 2003), appeal pending (Jan
Term 2004), citing People v. Little, 335 Ill.App.3d 1046,
1051, 782 N.E.2d 957, 962 (4th Dist. 2003)(Observing that a
reviewing court may affirm on any basis supported by the
record).   It is not the trial court's reasoning which is the
subject of this court's review, but rather, its judgment.
Cleveland, 342 Ill.App.3d at 915, 796 N.E.2d at 204.

A prosecutor may encourage the jury to consider the
victim of the crime during its deliberations. People v.
Jefferson, 257 Ill.App.3d 258, 271-272, 628 N.E.2d 925, 935
(1st Dist. 1993), appeal denied, 155 Ill.2d 569, 633 N.E.2d 10
(1994)(Prosecutor's request to give the murder victim his day
in court did not misstate the function of the jury or diminish
the presumption of innocence).   This remark, in isolation, did
not deprive defendant of his right to a fair trial. People v.
Edwards, ___ Ill.App.3d ___, ___ N.E.2d ___, 2005 WL 525703
(3rd Dist. 2005)(Prosecutor's comment that "society is
entitled to be protected from vicious criminals" was isolated
and did not constitute a pattern of intentional prosecutorial
misconduct which might have created unfair prejudice to
defendant and deprived him of his due process rights).

8

In short, defendant has presented no legitimate grounds for denying his appellate counsel's motion for leave to withdraw.  No meritorious issues can be raised on appeal, and an appeal from the trial court's dismissal of defendant's post-conviction petition would be frivolous.

<u>CONCLUSION</u>

WHEREFORE, the PEOPLE OF THE STATE OF ILLINOIS respectfully request this court to allow the motion of the Office of the State Appellate Defender to withdraw as counsel, and to affirm the judgment of the circuit court of Macon County which dismissed defendant's post-conviction petition as frivolous and patently without merit.

Respectfully submitted,


THE PEOPLE OF THE STATE OF ILLINOIS


Jack Ahola
State's Attorney
Macon County Courts Facility
253 East Wood
Decatur, Illinois  62523


Norbert J. Goetten
Director
Robert J. Biderman
Deputy Director
Denise M. Ambrose
Staff Attorney
State's Attorneys Appellate
            Prosecutor
725 South Second Street
Springfield, Illinois  62704
(217) 782 - 8076

COUNSEL FOR PLAINTIFF-APPELLEE

NO: 4-04-0242

IN THE

APPELLATE COURT OF ILLINOIS

FOURTH JUDICIAL DISTRICT

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS | ) | Appeal from the Circuit Court of the Sixth Judicial Circuit Macon County, Illinois |
| Plaintiff-Appellee, | ) | |
| Vs. | ) | No. 01-CF-971 |
| MARQUIS RIDLEY, | ) | Honorable John K. Greanias Judge Presiding. |
| Defendant-Appellant. | ) | |

## NOTICE AND PROOF OF SERVICE

TO:  Darryl Pratscher, Clerk,
Fourth District Appellate Court
201 W. Monroe, P.O. Box 19206
Springfield, IL 62794-9206

Daniel Kirwan, Deputy Defender
Office of the St.Apel.Dfndr.
Fifth Judicial District
730 E. Illinois Highway 15
Suite # 1
Mt. Vernon, IL  62864

Marquis Ridley
No. K88450, P.O. Box 711
Menard, IL  62259

The undersigned certifies that six copies of Plaintiff-Appellee's Brief and Argument were delivered to the Clerk of the Appellate Court; and three copies of same were served upon the defendant's Attorney of Record and the pro se defendant by enclosing said copies in envelopes addressed as indicated above, and by depositing said envelopes, with postage fully prepaid, in the U.S. Mail in Springfield, Illinois, on this 17th day of March, 2005.

Subscribed and sworn to
before me on this 17th
day of March, 2005.

_Shirley Bagby_

NOTARY PUBLIC
OFFICIAL SEAL
SHIRLEY BAGBY
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 1-27-2007

Carol Smith, Secretary
State's Attorneys Appellate
Prosecutor

**E-FILED**
Friday, 04 May, 2007  12:04:14 PM
Clerk, U.S. District Court, ILCD

NO. 4-04-0242

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT



FILED
JUL - 6 2005
CLERK OF THE
APPELLATE COURT, 4TH DIST.

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Macon County |
| MARQUIS RIDLEY, | ) | No. 01CF971 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | John K. Greanias, |
| | ) | Judge Presiding. |

---

ORDER

This appeal comes to us on the motion of the office of
the State Appellate Defender (OSAD) to withdraw as counsel on
appeal on the ground the postconviction petition filed by defen-
dant, Marquis Ridley, fails to present the gist of a constitu-
tional claim.  We agree and affirm.

I. BACKGROUND

In July 2001, defendant was charged jointly with Dustin
Chenoweth and DeMarco Hill with robbery (720 ILCS 5/18-1(a) (West
2000)), aggravated criminal sexual assault (720 ILCS 5/12-
14(a)(4) (West Supp. 2001)) in that they committed a criminal
sexual assault of S.M. during the commission of a robbery, and
two counts of aggravated battery with a deadly weapon (720 ILCS
5/12-4(a) (West Supp. 2001)), alleging aggravated battery was
committed by intentionally causing great bodily harm to S.M. and
by using a deadly weapon, a tire iron, respectively.

The evidence pertinent to this appeal is as follows.
On July 11, 2001, S.M. was working as a pizza-delivery driver and

had a call to a house on South Shore Drive in Decatur.  When she arrived at the house, she saw two young men, one white and one black, who told her they did not have correct change for the delivery.  She went to a nearby convenience store and got change. S.M. returned to the house and approached the same two men with the pizza.  She turned to see a black male come up behind her. As she turned forward again, one of the original two men hit her in the eye and she fell to the ground.  One of the men put his knee in her back and asked her where the money was.  She told them it was in the glove compartment and her purse.  The man then rolled her over and took money from her pockets.

One man then grabbed her hair and dragged her to the back of the house where it was dark.  Her next memory was of herself lying naked in the backyard.  One of the black males had sexual intercourse with her.  After he finished, "they" rolled her over so she was face down, discussed something, and then started kicking her.  Someone struck her in the back of the head at least three times with a hard, cold object that could have been a tire iron.  She then heard one of the men say, "Okay, walk, don't run."  She waited until she could no longer hear the voices and then grabbed her clothing and ran for help.

Sheila Luthy testified she was working at the Speedway convenience store on the night in question.  She stated that sometime after midnight the same woman who came to ask for change earlier returned.  She was naked, bloody, and crying.  The woman told Luthy she had been attacked and raped by the side of a house

- 2 -

by several men.  Luthy called the police.

Decatur police officer Edward Cunningham testified he
responded to the call.  He drove to the scene to collect evi-
dence.  S.M.'s car was still parked in the drive.  He retrieved a
Domino's pizza baseball cap, a blue bandana, a pair of women's
underwear, loose change, and a tire iron next to some blood on
the grass in the backyard.

Detective Jeremy Welker testified he interviewed
defendant at the police station on July 14, 2001.  Initially, in
a written statement, defendant denied any knowledge of the crime
and accused three others of falsely implicating him (four people
were present during the commission of the crime but only defen-
dant, Chenoweth, and Hill were charged in case No. 01-CF-971).
Defendant changed his story after being told the police had
information he was present during the crime.  Defendant admitted
he knew a robbery was to take place and he was to act as the
lookout.  He stated he observed the victim pull up in her car and
exit the vehicle.  He looked down the street for traffic.  When
he looked back toward the victim, he saw the victim fall backward
as if she had been struck.  Someone was standing over her, but he
could not tell who it was because it was dark.  He looked down
the street again.  When he looked at the victim again, he saw
someone taking her around the side of the house.  He then walked
to the car he and the others had parked down the street.  He
waited there for the others and then returned on foot to see what
was taking so long.  He observed Chenoweth sitting on the front

- 3 -

porch.   The two of them returned to the car.   The two others
joined them at the car shortly thereafter.

Defendant then made another written statement in which
he said the following:

"All we planned on was taking the $.   It
was dark in on the side [sic] the house
watching out, so all I see [sic] is her fall.
I don't know who exactly was standing over
her.   So they take her on [sic] side of the
house, so I run [sic] to the car.   But didn't
nobody [sic] else come with me.   So I come
back to see what's taking so long.   Dustin is
standing on the porch, and he tell [sic] me
to just stay with him, and by that time,
Cellus was at the car.   Like right after that
we left.   I never touched or hurt her in any
way.   So while this case is being tried,
please try to remember that."   (Emphasis in
original.)

Defendant did not present any evidence.   The jury was
instructed on accountability and withdrawal.   See Illinois
Pattern Jury Instructions, Criminal, Nos. 5.03, 5.04 (4th ed.
2000).

During closing arguments, defense counsel conceded
defendant's statements to the police showed defendant planned and
participated as a lookout in the robbery.   Counsel then argued

- 4 -

defendant was not guilty of the sexual assault or battery because
he was not there, he did not plan it, and he did not agree to
participate in it.  Counsel further suggested defendant had
withdrawn from the crime before the sexual assault and battery by
leaving the scene and going to Chenoweth's car.  The jury con-
victed defendant on all counts (the trial court found the two
counts of aggravated battery merged).

In April 2002, the trial court sentenced defendant to
concurrent terms of 30 years' and 5 years' imprisonment for
aggravated criminal sexual assault and aggravated battery with a
deadly weapon, respectively, and to a consecutive term of 7
years' imprisonment for robbery.

Defendant filed a direct appeal.  Defendant claimed (1)
he was denied effective assistance of counsel because counsel
misapplied the law of accountability and made concessions guaran-
teeing he would be found guilty of the charged offenses, (2) the
trial court erred by imposing a sentence on his conviction for
robbery because it was an included offense of aggravated criminal
sexual assault as charged in the information, and (3) the manda-
tory consecutive sentencing provisions contained in section 5-8-4
of the Unified Code of Corrections (Unified Code) (730 ILCS 5/5-
8-4 (West Supp. 2001)) is unconstitutional under Apprendi v. New
Jersey, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000).

In December 2003, this court held (1) defendant was not
denied effective assistance of counsel, (2) defendant's convic-
tion and sentence for robbery should be vacated because robbery

- 5 -

is an included offense of aggravated criminal sexual assault, and
(3) concerns raised by Apprendi, 530 U.S. 466, 147 L. Ed. 2d 435,
120 S. Ct. 2348, are not implicated by consecutive sentencing.
People v. Ridley, No. 4-02-0435 (December 8, 2003) (unpublished
order under Supreme Court Rule 23).  This court remanded to the
trial court with directions to impose consecutive sentences for
aggravated criminal sexual assault and aggravated battery with a
deadly weapon per the requirements under section 5-8-4(a)(ii) or
5-8-4(b) of the Unified Code.  See 730 ILCS 5-8-4(a)(ii), (b)
(West Supp. 2001).

On February 23, 2004, defendant filed a pro se petition
for postconviction relief pursuant to sections 122-1 through 122-
8 of the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1
through 122-8 (West 2002)).  Defendant's petition alleges (1) he
was denied effective assistance of counsel; (2) the trial court
erred by imposing sentence on the conviction for robbery because
it was an included offense of aggravated criminal sexual assault;
(3) section 5-8-4 of the Unified Code is unconstitutional under
Apprendi; (4) the conviction for aggravated criminal sexual
assault should be vacated or reduced to criminal sexual assault
because the element used to enhance criminal sexual assault to
aggravated criminal sexual assault, i.e., because the criminal
sexual assault was committed during the commission of robbery
(720 ILCS 5/12-14(a)(4) (West Supp. 2001)), no longer exists, as
this court directed the trial court to vacate the robbery convic-
tion and sentence because robbery was an included offense of

- 6 -

aggravated criminal sexual assault; (5) the evidence was insuffi-
cient to sustain his convictions for aggravated criminal sexual
assault and aggravated battery with a deadly weapon; (6) the
trial court erred in not directing a verdict of not guilty at the
close of the evidence as to the aggravated-criminal-sexual-
assault and aggravated-battery-with-a-deadly-weapon charges; (7)
the State's closing argument was improper and intended to inflame
the jury, and the trial court erred in overruling defendant's
objection to the improper argument; and (8) as a result of the
foregoing, he was denied due-process and equal-protection rights
under the fourth amendment (U.S. Const., amend. IV) and the
Illinois Constitution.

On March 1, 2004, the trial court summarily dismissed
defendant's petition.  The court stated claims of error Nos. 1,
2, and 3 were adjudicated by the appellate court on direct appeal
and were barred by res judicata, and "claim[] [Nos.] 4, 5, 6, 7,
and 8 involve matters of record which could have raised on direct
appeal" and are forfeited.  The court also stated defendant's
petition was frivolous and without merit.  This appeal followed.
OSAD was appointed to represent defendant and now moves to
withdraw as counsel pursuant to Pennsylvania v. Finley, 481 U.S.
551, 95 L. Ed. 2d 539, 107 S. Ct. 1990 (1987).  On its own
motion, this court granted defendant until February 7, 2005, to
file additional points and authorities.  He did so, and the State
has filed a responding brief.

- 7 -

## II. ANALYSIS

We review a trial court's dismissal of a postconviction petition without an evidentiary hearing <u>de novo</u>. <u>People v. Simms</u>, 192 Ill. 2d 348, 360, 736 N.E.2d 1092, 1105-06 (2000).

The Act (725 ILCS 5/122-1 through 122-8 (2002)) allows a defendant to collaterally challenge his or her conviction or sentence for violations of federal or state constitutional rights. <u>People v. Tenner</u>, 175 Ill. 2d 372, 377, 677 N.E.2d 859, 862 (1997). A petition for postconviction relief must "clearly set forth the respects in which petitioner's constitutional rights were violated" and "shall have attached thereto affidavits, records, or other evidence supporting its allegations or shall state why the same are not attached." 725 ILCS 5/122-2 (West 2002). "Any claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived" (725 ILCS 5/122-3 (West 2002)), <u>i.e.</u>, in the sense that they are forfeited.

The Act provides a three-step process for adjudicating petitions for postconviction relief in non-death-penalty cases. <u>People v. Gaultney</u>, 174 Ill. 2d 410, 418, 675 N.E.2d 102, 106 (1996). In the instant case, the petition was dismissed by the trial court at the first stage of this process.

The first stage requires the trial court to review the petition to determine if it is "frivolous or is patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2002). The court shall dismiss the petition in a written order if it determines the

- 8 -

petition is frivolous or patently without merit.   725 ILCS 5/122-2.1(a)(2) (West 2002).   The allegations in the petition, taken as true and liberally construed, need only present the gist of a constitutional claim to survive first-stage dismissal.  <u>People v. Edwards</u>, 197 Ill. 2d 239, 244, 757 N.E.2d 442, 445 (2001).   "This is a low threshold and a defendant need only present a limited amount of detail in the petition.  At this stage, a defendant need not make legal arguments or cite to legal authority."  <u>Gaultney</u>, 174 Ill. 2d at 418, 675 N.E.2d at 106.

A postconviction petition is not a direct appeal, but rather, it is a collateral proceeding and permits inquiry only into constitutional issues defendant did not raise and could not raise on direct appeal.  <u>People v. Williams</u>, 209 Ill. 2d 227, 232-33, 807 N.E.2d 448, 452 (2004).   "Thus, issues defendant raised on direct appeal are barred from consideration by the doctrine of <u>res judicata</u>."  <u>People v. Palmer</u>, 352 Ill. App. 3d 877, 884, 817 N.E.2d 129, 136 (2004), citing <u>Williams</u>, 209 Ill. 2d at 233, 807 N.E.2d at 452; see also <u>People v. Blair</u>, No. 96198, slip op. at 11 (June 3, 2005), __ Ill. 2d __, __, __ N.E.2d __, __ ("We *** conclude that the legislature intended that trial courts may summarily dismiss postconviction petitions based on [] <u>res judicata</u>").  Issues that could have been raised on direct appeal but were not are forfeited.  <u>People v. Shum</u>, 207 Ill. 2d 47, 58, 797 N.E.2d 609, 616 (2003); see also <u>Blair</u>, No. 96198, slip op. at 11, __ Ill. 2d __, __, __ N.E.2d __, __ ("We *** conclude that the legislature intended that trial courts may

- 9 -

summarily dismiss postconviction petitions based on *** forfei-
ture").   The doctrines of <u>res judicata</u> and forfeiture will be
relaxed when (1) fundamental fairness so requires, (2) the
forfeiture stems from the ineffective assistance of appellate
counsel, or (3) the facts relating to the claim do not appear on
the face of the original appellate record.

        As stated above, in defendant's direct appeal, this
court held (1) defendant was not denied effective assistance of
counsel, (2) defendant's conviction and sentence for robbery
should be vacated because robbery is an included offense of
aggravated criminal sexual assault, and (3) concerns raised by
<u>Apprendi</u>, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348, are
not implicated by consecutive sentencing.   Thus, claim Nos. 1
(ineffective assistance of trial counsel), 2 (robbery is an
included offense of aggravated criminal sexual assault; this
court ruled in defendant's favor in his direct appeal), and 3
(consecutive sentencing violates <u>Apprendi</u>) in defendant's
postconviction petition are barred by the doctrine of <u>res judi-
cata</u> as they were raised by defendant and adjudicated in his
direct appeal.   See <u>People v. Kimble</u>, 348 Ill. App. 3d 1031,
1034, 811 N.E.2d 346, 349 (2004) ("Since defendant's ineffective-
assistance-of-trial-counsel argument had already been addressed,
the trial court did not err in summarily dismissing defendant's
postconviction petition").

        The trial court found claim Nos. 4 (conviction for
aggravated criminal sexual assault should be reduced or vacated

because robbery conviction was vacated on appeal), 5 (insuffi-
cient evidence to sustain convictions for aggravated criminal
sexual assault and aggravated battery with a deadly weapon), 6
(trial court erred in not directing verdict of not guilty of
aggravated criminal sexual assault and aggravated battery with a
deadly weapon), 7 (improper closing argument), and 8 (violation
of his equal-protection and due-process rights) are forfeited
because defendant could have raised them in his direct appeal but
did not.

Defendant's claim his conviction for aggravated crimi-
nal sexual assault should be reduced or vacated because his
robbery conviction was vacated on appeal could not have been
raised in his direct appeal and thus is not forfeited (claim No.
4 in defendant's postconviction petition).  However, this claim
has no merit.

This claim is analogous to an argument made in People
v. Johnson, 223 Ill. App. 3d 169, 584 N.E.2d 515 (1991).  In
Johnson, the defendant was convicted of burglary, residential
burglary, and felony murder.  The trial court did not sentence
the defendant on the burglary conviction because it was a lesser-
included offense of residential burglary.  The defendant argued
that once the burglary conviction was vacated, the felony murder
became predicated upon the remaining felony conviction of resi-
dential burglary.  Johnson, 223 Ill. App. 3d at 170, 584 N.E.2d
at 516.  He noted residential burglary is not one of the enumer-
ated forcible felonies that may serve as a predicate to felony

- 11 -

murder.  The appellate court stated:

> "In the instant case, sufficient proof
> was presented to sustain the guilty verdicts
> of felony murder based on burglary and resi-
> dential burglary.  In this situation, vacat-
> ing the conviction for the underlying felony
> of burglary would not negate a finding that
> the defendant performed the acts causing the
> victim's death while the defendant was com-
> mitting the burglary.  It means only that
> because it would be impossible to commit the
> greater offense of felony murder without
> necessarily committing the lesser offense of
> burglary, judgment and sentence should only
> be imposed on the greater offense of felony
> murder.
>
> Simply because an underlying felony
> conviction is vacated does not mean, and has
> never meant, that the felony murder convic-
> tion cannot stand.  Nor do we accept the
> defendant's apparent assertion that whenever
> a defendant is also convicted of another
> offense, of which the predicate felony is
> also a lesser[-]included offense, this some-
> how negates, or operates as an acquittal of,
> the predicate felony.  A felony murder con-

viction remains intact and proper even after
any conviction for the predicate felony is
vacated.  This is true whether the vacatur is
grounded on the fact that the predicate fel-
ony is an included offense of felony murder
or the fact that it is an included offense of
another felony of which the defendant was
also convicted."  Johnson, 223 Ill. App. 3d
at 170-71, 584 N.E.2d at 517.

In our case, the jury found defendant guilty of aggra-
vated criminal sexual assault based on the fact the sexual
assault was committed during the commission of a robbery.
Sufficient proof was presented to sustain the guilty verdicts of
aggravated criminal sexual assault (based on committing sexual
assault during a robbery) and robbery.  Like in Johnson, vacating
the conviction for the lesser-included offense of robbery would
not negate a finding that the defendant was guilty of aggravated
criminal sexual assault based on the sexual assault being commit-
ted during the robbery.  It means only that because it would be
impossible to commit the greater offense of aggravated criminal
sexual assault (as charged) without necessarily committing the
lesser offense of robbery, judgment and sentence should only be
imposed on the greater offense of aggravated criminal sexual
assault.  See Johnson, 223 Ill. App. 3d at 170-71, 584 N.E.2d at
517.  "When multiple convictions of greater and lesser offenses
are obtained for offenses arising from a single act, a sentence

- 13 -

should be imposed on the most serious offense and the convictions on the less serious offenses should be vacated." People v. Garcia, 179 Ill. 2d 55, 71, 688 N.E.2d 57, 64 (1997). The fact this court vacated the lesser-included offense as required by Illinois law does not negate the fact the sexual assault occurred during a robbery.

Although defendant's claim Nos. 5, 6, 7, and 8 were likely forfeited, we will address the merits of defendant's arguments. We can affirm the trial court's judgment on any basis supported by the record. People v. Little, 335 Ill. App. 3d 1046, 1051, 782 N.E.2d 957, 962 (2003). As stated above, in addition to saying defendant's claim Nos. 4 through 8 were forfeited, the trial court stated they were frivolous and without merit; we agree.

Defendant argues he was not proved guilty beyond a reasonable doubt of aggravated criminal sexual assault and aggravated battery with a deadly weapon. "A criminal conviction will not be set aside unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt." People v. Collins, 106 Ill. 2d 237, 261, 478 N.E.2d 267, 276 (1985). In conducting this inquiry, the reviewing court does not function to retry defendant. People v. Smith, 185 Ill. 2d 532, 541, 708 N.E.2d 365, 369 (1999). "The proper standard is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reason-

- 14 -

able doubt." <u>People v. McDade</u>, 219 Ill. App. 3d 317, 326, 579
N.E.2d 1173, 1180 (1991), citing <u>Collins</u>, 106 Ill. 2d at 261, 478
N.E.2d at 277.

The trier of fact has the responsibility to determine
the weight to be given witnesses' testimony, their credibility,
and the reasonable inferences to be drawn from the evidence.
<u>People v. Steidl</u>, 142 Ill. 2d 204, 226, 568 N.E.2d 837, 845
(1991). "A reviewing court may not substitute its judgment for
that of the jury or trial court in such matters." <u>People v.
Bowen</u>, 289 Ill. App. 3d 378, 384, 682 N.E.2d 453, 457 (1997).

Defendant's statement to police shows he agreed to
participate in the robbery. Defendant served as a lookout. The
question in this case is whether defendant was guilty of aggra-
vated criminal sexual assault and aggravated battery based on
accountability.

As stated above, the jury was instructed on account-
ability and withdrawal. Under Illinois law, a person can be held
legally accountable for another when:

"Either before or during the commission
of an offense, and with the intent to promote
or facilitate such commission, he solicits,
aids, abets, agrees or attempts to aid, such
other person in the planning or commission of
the offense." 720 ILCS 5/5-2(c) (West 2000).

"Evidence that a defendant voluntarily attached himself
to a group bent on illegal acts with knowledge of its design

- 15 -

supports an inference he shared the common purpose and will
sustain his conviction as a principal for a crime committed by
another in furtherance of the venture." <u>People v. Reckers</u>, 251
Ill. App. 3d 790, 794, 623 N.E.2d 811, 815 (1993).  When these
acts are dangerous in nature or involve the use of force and
violence, the defendant "becomes accountable for any wrongdoings
of the other members of the group in furtherance of a common
purpose even though he did not actively participate in the overt
act itself." <u>Reckers</u>, 251 Ill. App. 3d at 794, 623 N.E.2d at
815.  If it is proved that a defendant was at the scene without
disapproving or opposing the conduct, the jury may consider this
conduct along with the other circumstances surrounding a crime in
reaching a conclusion that the defendant assented to the commis-
sion of the crime, approved of it, and was thereby aiding and
abetting it. <u>Reckers</u>, 251 Ill. App. 3d at 794, 623 N.E.2d at
815.

> "In addition to the accused's presence at the
> scene of the crime, without disassociating
> himself from the crime, other factors which
> raise inferences the accused aided in the
> commission of the crime include flight from
> the scene, continued association with the
> perpetrator after the criminal act, failure
> to report the incident, acceptance of illegal
> proceeds of the crime, and concealment or
> destruction of the evidence." <u>People v.</u>

<u>Houston</u>, 258 Ill. App. 3d 364, 368, 629
N.E.2d 774, 778 (1994).

At trial, defendant argued he withdrew from the plan
before the commission of the sexual assault and battery.  A
defendant is not accountable for the conduct of another if:

> "Before the commission of the offense,
> he terminates his effort to promote or facil-
> itate such commission, and does one of the
> following: wholly deprives his prior efforts
> of effectiveness in such commission, or gives
> timely warning to the proper law enforcement
> authorities, or otherwise makes proper effort
> to prevent the commission of the offense."
> 720 ILCS 5/5-2(c)(3) (West 2000).

Defendant's going to the car and waiting for the others
to return did not constitute withdrawal.  He did not wholly
deprive his efforts of being the lookout of their effectiveness,
give timely warning to proper law enforcement authorities, or
make any effort to prevent the commission of the offenses.
Further, "[i]n order to constitute an effective withdrawal[,]
some kind of disapproval or opposition must be shown to the
activities which the defendant knew had either preceded or were
about to proceed."  <u>People v. Lacey</u>, 49 Ill. App. 2d 301, 307,
200 N.E.2d 11, 14 (1964), citing <u>People v. Marx</u>, 291 Ill. 40, 48,
125 N.E. 719, 722 (1920).  The record does not contain any
evidence defendant showed his disapproval or opposition to the

- 17 -

activities that took place.  Accordingly, the evidence was
sufficient to convict defendant of aggravated criminal sexual
assault and aggravated battery.

Next, defendant claims the trial court erred when it
denied his motion for a directed verdict at the end of the
State's case.  We disagree.

"When, at the close of the State's evidence ***, the
evidence is insufficient to support a finding or verdict of
guilty[,] the court may and on motion of the defendant shall make
a finding or direct the jury to return a verdict of not guilty,
enter a judgment of acquittal[,] and discharge the defendant."
725 ILCS 5/115-4(k) (West 2000).  As stated above, defendant did
not present any evidence.  Further, we concluded defendant's
challenge to the sufficiency of the evidence is without merit.
The evidence considered in our above discussion on the suffi-
ciency of the evidence is the same evidence the trial court
considered when ruling on defendant's motion for a directed
verdict.  Since we concluded the evidence was sufficient to
support defendant's conviction, we necessarily concluded the
trial court did not err in denying defendant's motion for a
directed verdict.

Next, defendant argues the State's closing argument was
improper and intended to inflame the jury and the trial court
erred in overruling his objection to the argument.  We disagree.

All defendants are entitled to a fair trial free from
prejudicial comments by the prosecution.  People v. Barker, 298

- 18 -

Ill. App. 3d 751, 757, 699 N.E.2d 1039, 1043 (1998).  However,
prosecutors are given wide latitude in closing arguments.  <u>People
v. Hester</u>, 271 Ill. App. 3d 954, 957, 649 N.E.2d 1351, 1355
(1995).  "In closing argument, counsel may make a fair comment
upon the evidence, present the evidence in the light most favor-
able to his case, and draw inferences from the evidence.  How-
ever, he may not misrepresent the evidence or argue facts not in
evidence."  <u>Lambie v. Schneider</u>, 305 Ill. App. 3d 421, 429, 713
N.E.2d 603, 609 (1999).

When considering a claim of improper closing arguments,
we must consider the comments in the context of the closing
arguments as a whole.  <u>People v. Taylor</u>, 345 Ill. App. 3d 1064,
1081, 804 N.E.2d 116, 129 (2004).  "[T]he reviewing court must
indulge in every reasonable presumption that the trial court
properly exercised its discretion in determining the propriety of
the remarks."  <u>Taylor</u>, 345 Ill. App. at 1081, 804 N.E.2d at 129.

Defendant's petition does not specify what argument
made by the State was improper.  However, the record shows only
one objection during the State's closing argument by defense
counsel.  The following exchange took place during closing
arguments:

> "[PROSECUTOR]: But I want to talk to you
> about something other than the defendant's
> rights first.  I want to talk to you about
> [S.M.]  It's a case about [S.M.]  I want to
> talk to you about what happened to [the vic-

- 19 -

tim] on July the 11th of 2001. [S.M.] was on
that date and before that date doing her best
to work a job, be an honest person[,] and
work a job.

It's a job that some people would look
down their nose at.  Some people would look
down their nose and say, well, I won't take a
job like that.  I won't deliver pizza.  I
won't drive my own car and work for $5.25,
maybe get a tip, maybe not, work at night,
maybe go deliver a pizza and maybe get ripped
off[,] and maybe not.  But, [S.M.] was will-
ing to work that kind of job until July the
11th of 2001.

I'd like you to think about the reward
that she got for being an honest individual
and working an honest job.

[DEFENSE COUNSEL]: Objection, Your
Honor.  I believe this argument is an attempt
to invoke sympathy.

[THE COURT]: Well[,] the objection is
overruled.  But, ladies and gentleman, part
of the instructions I will give you are [sic]
that you're not to decide this case based on
sympathy.  You're the judges of the facts.
It is your duty to determine what the facts

are and to render a fair verdict based upon
the evidence and the law as given to you by
the Court.  You may proceed counsel.

[PROSECUTOR]: Thank you.  The reward
[S.M.] got for trying to be an honest indi-
vidual and work and honest job was that.
You'll get a chance to see this photograph
more closely.  That's what she got.  She got
12 staples in the back of her head.  She got
beaten and kicked while she was down on the
ground, and she got raped.  That man there is
partly responsible."

The trial court instructed the jury that "[n]either
sympathy nor prejudice should influence you" and "[t]he evidence
which you should consider consists only of the testimony of the
witnesses and the exhibits which the court has received."  The
court also instructed the jury that "[n]either opening statements
or closing arguments are evidence, and any statement or argument
made by the attorneys which is not based on the evidence should
be disregarded."  As Illinois courts have stated, such instruc-
tions tend to cure any prejudice from improper remarks.  People
v. Garcia, 231 Ill. App. 3d 460, 469, 596 N.E.2d 1308, 1315
(1992); see also People v. Bratton, 178 Ill. App. 3d 718, 726,
533 N.E.2d 572, 578 (1989) ("Instructions of this sort by the
trial court decrease the likelihood that improper remarks in the
prosecutor's closing argument rose to the level of plain error").

- 21 -

In <u>Bratton</u>, 178 Ill. App. 3d at 726, 533 N.E.2d at 578, this court also held that a court must presume the jurors had followed the court's instructions.  Following this presumption, any influence or prejudice caused by the prosecutor's alleged improper comments was likely cured by the court's instructions.  Moreover, nothing in the record indicates the jury was influenced or prejudiced to the extent that defendant was denied a fair and impartial trial.

The evidence of defendant's guilt was substantial enough that the jury would have returned a verdict of guilty even if the prosecutor had not made this argument.  As a result, any alleged impropriety in the prosecutor's closing argument does not warrant a new trial, and defendant has not raised the gist of a constitutional claim.

Finally, defendant claims his due-process and equal-protection rights were violated because of the alleged "errors" he complains of above.  Since we have concluded defendant's postconviction petition's claim Nos. 4 through 7 have no merit, claim No. 8 necessarily lacks merit too.  Further, "[a]n allegation in a postconviction petition must be based on factual allegations and not mere conclusory statements."  <u>People v. Ivy</u>, 313 Ill. App. 3d 1011, 1019, 730 N.E.2d 628, 637 (2000).

### III. CONCLUSION

For the reasons stated, we grant OSAD's motion and affirm the trial court's judgment.

Affirmed.

- 22 -

KNECHT, J., with McCULLOUGH and MYERSCOUGH, JJ.,
concurring.

E-FILED
Friday, 04 May, 2007  12:04:35 PM
Clerk, U.S. District Court, ILCD

IN THE
Illinois Supreme
Court

| | |
|---|---|
| State of Illinois | ) |
| Plaintiff, | ) |
| | ) Case No. 4-04-0242 |
| v. | ) |
| Marcus Ridley | ) |
| Defendant | ) |

## PROOF/CERTIFICATE OF SERVICE

TO: Mr Scott Reutter
Macon County State Attorney
253 E Wood St
Decatur Il, 62523

TO: Mrs Juleann Hornyak Clerk
Supreme Court Building
Supreme Court of Illinois
Springfield, Il 62706

TO: Lisa Madigan
Attorney General
100 West Randolph St 12th Fl.
Chicago, Il 60601

TO: _____
_____
_____
_____

PLEASE TAKE NOTICE that on ___7-26___, 2005, I have placed the
documents listed below in the institutional mail at __Menard__ Correctional Center,
properly addressed to the parties listed above for mailing through the United States Postal
Service: _Petition for leave to Appeal_
_____
_____

Pursuant to 28 USC 1746, 18 USC 1621 or 735 ILCS 5/1-109, I declare, under penalty of
perjury, that I am a named party in the above action, that I have read the above
documents, and that the information contained therein is true and correct to the best of my
knowledge.

DATE: _7-26-05_

/s/ Marcus Ridley
NAME: Marcus Ridley
IDOC#: K-88450
__Menard__ Correctional Center
P.O. BOX 711
__Menard__, IL 62259

Revised February

EXHIBIT H

NO._____

---

IN THE ILLINOIS SUPREME COURT

---

PEOPLE OF STATE OF ILLINOIS        )

             APPELLEE,        )

   v.

                    )

MARQUS RIDLEY

          APPELLANT.        )

---

MOTION TO PROCEED AS POOR PERSON

    NOW COMES PETITIONER, PRO-SE AND RESPECTFULLY REQUEST THIS HONORABLE COURT FOR LEAVE TO PROCEED IN FORMA PAUPERIS IN THE ABOVE CAPTION.

    PETITIONER STATES THAT HE IS LEGALLY INDIGENT AND WITHOUT THE FUNDS OR MEANS TO PAY COURT COST, GIVE SECURITY THEREOF, OR TO HIRE ATTORNEY.

    PETITIONER IS NOT EMPLOYED AND DOES NOT HAVE PROPERTY NOR STOCK.

    WHEREFORE, PETITIONER PRAYS THAT THIS MOTION BE GRANTED.

                      RESPECTFULLY SUBMITTED,

                      S: *Marqus Ridley*

NO._____

_____

IN THE ILLINOIS SUPREME COURT

_____

PEOPLE OF STATE OF ILLINOIS   )    PETITION FOR LEAVE TO APPEAL FROM
                                 THE APPELLATE COURT OF ILLINOIS,
              APPELLEE,   )    FIFTH DISTRICT, NO. 4-04-0242

    V.

MARQUS RIDLEY             )    THERE HEARD ON APPEAL FROM THE
                                  CIRCUIT COURT OF  MACON COUNTY
             APPELLANT.        JUDGE: JOHN K. GREANIAS

                           )            PRESIDING.

_____

PETITION FOR LEAVE TO APPEAL.

TO: THE HONORABLE CHIEF JUSTICE AND ASSOCIATES JUSTICES OF THE
SUPREME COURT OF ILLINOIS.

MAY IT PLEASE YOUR HONORS:

PRAYER FOR LEAVE TO APPEAL

PETITIONER, MARQUS RIDLEY RESPECTFULLY PETITIONS THIS COURT

TO EXERCISE ITS SOUND JUDICIAL DISCRETION AND REVIEW A VOID JUDGMENT

WHEREAS OFFENSE IN INSTANT CASE WAS VACATED THAT AGGRAVATED  OTHER

SAID OFFENSE.  THIS PETITION IS BROUGHT UNDER AUTHORITY OF SUPREME

COURT RULE 315.

NO._____

---

### IN THE ILLINOIS SUPREME COURT

---

PEOPLE OF STATE OF ILLINOIS

APPELLEE,

v.

MARQUS RIDLEY

APPELLANT.

---

PETITION FOR LEAVE TO APPEAL FROM THE ILLINOIS
APPELLATE COURT FIFTH DISTRICT NO. 4-04-0242 , THERE
HEARD ON APPEAL FROM THE CIRCUIT COURT OF MACON
COUNTY JUDGE: JOHN K. GREANIAS PRESIDING.

PETITION FOR LEAVE TO APPEAL.

BY: MARQUS RIDLEY.

## REASONS FOR GRANTING PETITION:

THIS HONORABLE COURT SHOULD REVIEW PETITION'S PETITION
FOR LEAVE TO APPEAL FOR THE FOLLOWING REASONS:

1. IN INSTANT CASE, PETITIONER'S CONVICTION SHOULD BE RE-
   VERSED AND REMANDED FOR A NEW TRIAL.  FOR INSTANT, TRIAL
   JURY NEVER FOUND PETITIONER GUILTY OF AGGRAVATED CRIMINAL
   SEXUAL ASSAULT BEYOND A REASONABLE DOUBT AS CHARGED IN THE
   INFORMATION.  PETITIONER WAS ONLY FOUND GUILTY OF ROBBERY
   IN ORDER TO FIND PETITIONER GUILTY OF "CRIMINAL SEXUAL ASSAULT".
   THEREFORE, ERROR WAS REVERSAL AND COURT COULD NOT JUSTIFY THE
   CORRECTION OF ERROR ABSENT A NEW TRIAL.  (PLEASE SEE FINLEY
   MOTION TO WITHDRAW) ATTACHED.

2. PETITIONER'S MANDATORY CONSECUTIVES SENTENCES SHOULD BE CON-
   SIDERED  BY THIS HONORABLE COURT IN LIGHT OF THE UNITED STATES
   SUPREME DECISION IN (2000) APPRENDI V. NEW JERSEY.

3. THE EVIDENCE WAS INSUFFICIENT TO SUPPORT CONVICTION FOR SEXUAL
   ASSAULT AND AGGRAVATED BATTERY BECAUSE TRIAL JURY WAS NOT
   INSTRUCTED OF THE ACTUAL CHARGES ALLEGED IN THE INFORMATION.

4. PETITIONER FURTHER ALLEGES THAT HE WAS DENIED HIS CONSTITU-
   TIONAL RIGHT TO A FAIR AND IMPARTIAL TRIAL WHEN TRIAL COURT
   OVERRULED DEFENSE OBJECTION TO A REMARK MADE IN PROSECUTOR'S
   CLOSING ARGUMENT.  THE REMARK WAS MADE IN A SARCASTIC WAY
   DEMONSTRATING PROSECUTORIAL MIS-CONDUCT SEEKING A VERDICT
   BY URGING SYMPATHY FROM THE JURY.

5. APPELLATE COUNSEL (ON DIRECT REVIEW) WAS INEFFECTIVE WHEREAS

-1-

COUNSEL FAILED TO RAISE ISSUES THAT WERE MOST LIKELY TO
SUCCEED ON APPEAL.　INSTEAD, APPELLATE COUNSEL CHOSE TO
RAISE ISSUES THAT WERE WEAKER THAN OTHERS. HAD APPELLATE
COUNSEL RAISED THE REASONABLE DOUBT ISSUES AND DUE PROCESS
VIOLATIONS PETITIONER WOULD HAD SUCCEEDED ON DIRECT REVIEW.

6. WHEREFORE, THIS HONORABLE COURT GRANT LEAVE TO APPEAL TO
REVIEW AN ERRONEOUS CONVICTION.

s: Marcus Shirley

7. Petitioner also Alleges that the now vacated charge & sentence
for robbery played a factor in Trial Judge sentencing process
so petitioner ast that he be remanded back for resentencing
on other charge still standing.

STATE OF ILLINOIS
                    )
                    )  SS
                    )
COUNTY OF RANDOPLH

                    AFFIDAVIT


        UNDER THE PENALTY AS PROVIDE BY LAW PURSUANT TO
SECTION 1-109 OF THE CODE, I CERTIFY THAT THE ABOVE STATEMENTS
ARE TRUE TO THE BEST OF MY KNOWLEDGE.



                        /s/ Marqus Ridlay


                            -3-

ATTACHED

E-FILED
Friday, 04 May, 2007  12:04:54 PM
Clerk, U.S. District Court, ILCD

**SUPREME COURT OF ILLINOIS**
**CLERK OF THE COURT**
SUPREME COURT BUILDING
SPRINGFIELD, ILLINOIS 62701
(217) 782-2035

101107

December 1, 2005

Hon. Lisa Madigan
Attorney General, Criminal Appeals Div.
100 West Randolph St., 12th Floor
Chicago, IL 60601

No. 101107 - People State of Illinois, respondent, v. Marquis
            Ridley, petitioner.  Leave to appeal, Appellate
            Court, Fourth District.

The Supreme Court today DENIED the petition for leave to
appeal in the above entitled cause.

The mandate of this Court will issue to the Appellate Court
on December 23, 2005.

EXHIBIT I